**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| PATRICIA VILLA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CAVAMEZZE GRILL, LLC, et al., )<br><br>Defendants. ) | Civil Action No: 1:15-cv-000222 (TSE/MSN) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS
CAVAMEZZE GRILL, LLC'S AND CAVAMEZZE GRILL MOSAIC, LLC'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ......................................................................... 2

ARGUMENT ..................................................................................................................... 10

    I.    Summary Judgment is Appropriate Where There Are No Genuine Issues Of
Material Fact ..................................................................................................................... 10

    II.    Defendants Are Entitled to Summary Judgment Because The Uncontroverted
Evidence is that Neither Plaintiff's October 29, 2013 Performance Review nor the
Termination of Her Employment Were Retaliatory. ......................................................... 11

        a.    The Undisputed Facts Demonstrate That Defendants Did Not Retaliate Against
Plaintiff By Issuing Her A Written Warning ..................................................................... 12

            i.    The written warning was not an adverse action ........................................... 12

            ii.    The written warning was not causally related to Plaintiff's complaint to
Mr. Gresham because the manager who gave Plaintiff the written warning was
unaware of her complaint to Mr. Gresham ...................................................................... 13

            iii.    Defendants gave Plaintiff the October 29 written warning because of her
poor performance and Plaintiff cannot demonstrate that the reason for the written
warning was pretextual ................................................................................................... 15

        b.    The Undisputed Facts Demonstrate That Defendants Did Not Retaliate Against
Plaintiff By Terminating Her Employment ...................................................................... 17

            i.    Defendants terminated Plaintiff because they reasonably concluded, after
investigating her allegations, that she had made a knowingly false report ..................... 17

            ii.    Plaintiff cannot demonstrate that the reason for the termination was pretextual ...... 18

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................10

*Avent v. Kraft Foods Global, Inc.*
    2012 U.S. LEXIS 116010 (E.D. Va. Aug. 16, 2012).........................................11, 20

*Cox v. Onondaga Cnty. Sheriff's Dep't*,
    760 F.3d 139 (2d. Cir. 2014)...........................................................................18

*Currie v. Arthur*,
    2012 U.S. Dist. LEXIS 68000 (E.D. Va. May 15, 2012) .............................11, 12, 13

*Deans v. CSX Transportation*,
    152 F.3d 326 (4th Cir. 1998) .........................................................................10, 18

*Emmett v. Johnson*,
    532 F.3d 291 (4th Cir. 2008) ...........................................................................10

*Graves v. Indus. Power Generating Corp.*,
    2011 U.S. Dist. LEXIS 871 (E.D. Va. Jan. 5, 2011) ........................................13, 19

*Hill v. Lockheed Martin Logistics Mgmt.*,
    357 F.3d 277 (4th Cir. 2004) ...........................................................................10

*Jackson v. Nattrass*,
    2014 U.S. Dist. LEXIS 100567 (E.D. Va. June 25, 2014) ...................................14

*James v. Booz-Allen & Hamilton, Inc.*,
    368 F.3d 371 (4th Cir. 2004) .........................................................................12, 13

*Marini v. Costco Wholesale Corp.*,
    64 F. Supp. 3d 317, 328 (D. Conn. 2014)...........................................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................10

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).........................................................................................11

*Ramos v. Molina Healthcare, Inc.*,
    963 F. Supp. 2d 511 (E.D. Va. 2013) ...............................10, 11, 14, 15, 16, 17, 18

*Ray v. Trans States Airlines,*
    2002 U.S. Dist. LEXIS 22658 (E.D. Mo. Oct. 10, 2002) ......................................................18

*Teamsters Joint Council No. 83 v. Central, Inc.,*
    947 F.2d 115 (4th Cir. 1991) ......................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................................................10

Federal Rule of Civil Procedure 56 ..................................................................................................1

Local Rules 7 and 56..........................................................................................................................1

Local Rules 56(B) and 7(F) ...............................................................................................................2

Defendants CavaMezze Grill, LLC ("CMG") and CavaMezze Grill Mosaic, LLC ("Mosaic") (collectively "Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56, have moved for the entry of summary judgment in their favor and against Plaintiff Patricia Villa ("Plaintiff").  This Memorandum is submitted in support of that motion.

<u>**INTRODUCTION**</u>

Plaintiff claims that Defendants unlawfully retaliated against her when they issued her a written warning regarding her performance and, subsequently, terminated her after she had reported that a supervisor had sexually harassed two other employees.  Neither of her claims is supported by the evidence and neither withstands legal analysis. Defendants are therefore entitled to summary judgment on both.

First, Plaintiff conceded at her deposition that she has no evidence that her supervisor knew that she engaged in protected activity prior to issuing her the written warning that she claims was retaliatory.  But the evidence is uncontroverted that her supervisor gave Plaintiff the formal written warning in the hopes that it would cause her to correct her performance, not as some pretext for retaliation. Indeed, it is also uncontroverted that her supervisor was unaware of her alleged protected activity until *after* he gave Plaintiff the written warning. So, the warning could not have been given in retaliation for her alleged protected activity. Finally, since the written warning was not accompanied by a demotion, compensation reduction or other diminution in the terms and conditions of Plaintiff's employment, it was not an adverse action and therefore does not constitute a legally cognizable basis for her retaliation claim, in any event.

Likewise, the subsequent termination of Plaintiff's employment was not unlawful retaliation.  After investigating Plaintiff's allegations, Defendants reasonably concluded that

Plaintiff had fabricated them. Both of the two alleged harassment victims denied that they were ever sexually harassed by Plaintiff's supervisor or that they had ever told Plaintiff that they had been harassed.  Defendants therefore reasonably concluded that Plaintiff made a false report regarding her supervisors, as they were entitled to do.

## STATEMENT OF UNDISPUTED FACTS

Defendants submit the following statement of undisputed facts ("S/F"), in accordance with Local Rules 56(B) and 7(F):

1.      Defendant CavaMezze Grill, LLC ("CMG") is a Maryland limited liability company.  It is the parent company of several fast casual restaurants, each of which is owned and operated by a wholly owned subsidiary of CMG. (Schulman Dep., Tab A, 15:1-3, 11-14, 37:16-22; Gresham Dep., Tab D, 74:14-16.)[12]

2.      Defendant CavaMezze Grill Mosaic, LLC ("Mosaic") is a Virginia limited liability company.  It owns and operates the Cava Mezze Grill restaurant located in Merrifield, Virginia. Mosaic is a wholly owned subsidiary of CMG. (Schulman Dep., Tab A, 13:10-11, 39:14-18;.)

3.      Plaintiff Patricia Villa ("Plaintiff") was employed by Mosaic as a Supervisor from approximately February 22, 2013 until November 5, 2013.  (Plaintiff Dep., Tab C, 30:7-20.)[3]

4.      At all relevant times, Rob Gresham ("Mr. Gresham") was the Director of Operations for CMG and directly supervised the General Managers and Assistant Managers of each of CMG's wholly owned subsidiaries.  (Gresham Dep., Tab D, 15:5-7.)

5.      Mr. Gresham directly supervised and evaluated the performance of Mosaic's General Manager and Assistant Manager.  (Gresham Dep., Tab D, 25:19-22, 29:8-30:15.)

---

[1] The relevant pages of the Deposition of Brett Schulman ("Schulman Dep.") are attached at Tab A.
[2] The relevant pages of the Deposition of Rob Gresham ("Gresham Dep.") are attached at Tab B.
[3] The relevant pages of the Deposition of Patricia Villa ("Plaintiff Dep.") are attached at Tab C.

6.     Marcelo Butron was the General Manager and Juan Cardona was the Assistant Manager at Mosaic during the period Plaintiff was employed there.  (Plaintiff Dep., Tab C, 33:14-22, 50:11-21; Butron Dep., Tab D, 11:19-12:1, 29:10-14.)[4]

*Plaintiff's Employment at the Tyson's Corner Restaurant*

7.     Prior to her employment at Mosaic, from approximately March 2012 until February 2013, Plaintiff worked at the Cava Mezze Grill restaurant located in Tyson's Corner, Virginia, which was owned and operated by CavaMezze Grill Tyson's Corner, LLC ("Tyson's Corner"), a separate corporate entity from Mosaic.  (Plaintiff Dep., Tab C, 24:18-25:9, 29:5-8; Gresham Dep., Tab D, 23:16-19.)

8.     Plaintiff started as a Cashier there, and after approximately six months, she was promoted to a Supervisor.  (Plaintiff Dep., Tab C, 29:13-17.)

9.     After her promotion to Supervisor, Plaintiff's work performance began to decline. For example, she would start arguments with male supervisors and speak negatively about them to crew members.  On April 9, 2013, Mr. Gresham gave Plaintiff a written warning related to this behavior towards another supervisor.  (Gresham Dep., Tab D, 20:4-17, 24:7-9.)

*Plaintiff's Transfer to Mosaic*

10.    Plaintiff asked to transfer to Mosaic because it was closer to her home, and her request was granted.  She began working at Mosaic on February 22, 2013. (Plaintiff Dep., Tab C, 30:15-31:5.)

11.    Mr. Butron was Plaintiff's direct supervisor at Mosaic.  (Plaintiff Dep., Tab C, 31:11-12; Butron Dep., Tab D, 11:1-9, 16:20-17:2.)

12.    In his role as General Manager of Mosaic, Mr. Butron directly supervised and evaluated the performance of all Mosaic employees, including its Supervisors, and was

---

[4] The relevant pages of the Deposition of Marcelo Butron ("Butron Dep.") are attached at Tab D.

responsible for executing daily store operations.  (Gresham Dep., Tab D, 30:16-31:7; Butron Dep., Tab D, 17:1-22; Schulman Dep., Tab A, 24:1-19.)

13.     Mr. Butron had known Plaintiff for several years. He had met her several years earlier when she worked at Chipotle.  (Butron Dep., Tab D, 15:17-16:6.)

14.     Ana Valdivia, the General Manager of the Tyson's Corner restaurant, warned Mr. Butron that Plaintiff had been a problematic employee under her supervision.  Mr. Butron had also been present when Mr. Gresham gave Plaintiff a written warning about her performance at Tyson's Corner on April 9, 2013.  (Butron Dep., Tab D, 22:2-23:1, 24:15-25:29, Ex. 1.)

*Plaintiff's Performance Issues at Mosaic*

15.     Plaintiff's performance as Supervisor at Mosaic was poor.  (Butron Dep., Tab D, 18:18-19:1.)

16.     Mr. Butron attempted to take an informal approach to evaluating Plaintiff's performance and "cut her some slack."  (Butron Dep., Tab D, 33:3-5.)

17.     On September 24, 2013, Mr. Butron and Juan Cardona, the Assistant Manager at Mosaic, had an informal meeting with Plaintiff to discuss performance expectations, specifically Plaintiff's "lack of organizational and leadership skills."  Mr. Butron memorialized this meeting in writing a few days later.  (Butron Dep., Tab D, 27:15-30:21, Ex. 3.)

18.     On October 8, 2013, Mr. Butron and Mr. Cardona had another informal meeting with Plaintiff regarding her performance, specifically Plaintiff's "availability, new hires and training, [and] lack of communication."  Again, Mr. Butron memorialized this meeting in writing a few days later.  (Butron Dep., Tab D, 31:15-32:10, Ex. 4.)

19.     Plaintiff recalls informally meeting with Mr. Butron and Mr. Cardona in the fall of 2013 and being told that she needed to have a more flexible schedule.  (Plaintiff Dep., Tab C, 60:4-61:10.)

20.     On October 17, 2013, Mr. Valdivia and Mr. Butron had an informal meeting with Plaintiff regarding her reoccurring performance issues, specifically "shift control, lack of knowledge and availability."  Mr. Butron memorialized this meeting in writing.  (Butron Dep., Tab D, 33:11-34:12, Ex. 5.)

*Plaintiff's Complaint to Mr. Gresham about Mr. Butron's Harassment of Other Employees*

21.     The morning of October 28, 2013, Plaintiff called Mr. Gresham to report that Judith Bonilla, a former Mosaic employee, told her that Mr. Butron said he would give Ms. Bonilla a raise in exchange for sex.  Plaintiff said that Ms. Bonilla made the allegation about Mr. Butron while she and Osmar Marinero, a Mosaic employee, were at Plaintiff's house. (Plaintiff Dep., Tab C, 70:16-71:6, 74:2-9, 79:5-18, 89:12-18; Gresham Dep., Tab D, 43:2-13, 46:14-17.)

22.     During that conversation, Plaintiff also reported to Mr. Gresham that Jessica Arias, a former Mosaic employee, left Mosaic because Mr. Butron told her Ms. Arias he would give her a raise in exchange for sex.  (Plaintiff Dep., Tab C, 90:21-91:4; Gresham Dep., Tab D, 43:2-5, 43:18-44:3.)

23.     Plaintiff admits, however, that Ms. Arias had never told her that Mr. Butron asked her for sex.  Rather, Plaintiff was just speculating that is why Ms. Arias left Mosaic, but Plaintiff did not inform Mr. Gresham of this fact.  (Plaintiff Dep., Tab C, 90:17-91:13.)

24.     Mr. Gresham informed Plaintiff that he would investigate the allegations regarding Mr. Butron.  (Gresham Dep., Tab D, 44:14-15; Plaintiff Dep., Tab C, 71:7-9.)

*Plaintiff Fails To Improve Her Performance and Receives A Written Warning*

25.    Meanwhile, Mr. Butron had decided to give Plaintiff a written warning because her communication and schedule flexibility had not improved, and despite the previous informal meetings he had with Plaintiff.  (Butron Dep., Tab D, 25:20-26:8, 27:6-14.)

26.    Mr. Butron and Mr. Valdivia met with Plaintiff on October 29, 2013 and gave her the written warning.  (Plaintiff Dep., Tab C, 67:2-7, 67:19-68:5, Ex. 8.)

27.    Plaintiff acknowledges that during that meeting she received criticism regarding her lack of communication and failure to make adjustments to her schedule as necessary. (Plaintiff Dep., Tab C, 68:8-17.)

28.    At the time Plaintiff made her complaint to Mr. Gresham, Mr. Gresham was aware that she had a meeting scheduled for October 29, 2013 with Mr. Butron and Mr. Valdivia to discuss her continued performance issues.  (Gresham Dep., Tab D, 45:2-46:9.)

29.    Mr. Gresham waited until after the Plaintiff's October 29 meeting with Mr. Butron and Mr. Valdivia to call Mr. Valdivia and tell him about Plaintiff's complaint regarding Mr. Butron.  Mr. Valdivia was therefore unaware of Plaintiff's complaint when he met with her to discuss her performance issues.  (Gresham Dep., Tab D, 48:13-15.)

30.    Mr. Gresham did not inform Mr. Butron of Plaintiff's complaint until November 5, 2013.  Mr. Butron was therefore unaware of Plaintiff's complaint against Butron when he met with her to discuss her performance issues.  (Gresham Dep., Tab D, 55:6-14; Butron Dep., Tab D, 40:19-22.)

31.    Plaintiff admits that she does not have any evidence to support her belief that Mr. Butron knew that she made a complaint to Mr. Gresham prior to issuing the written warning to her.  (Plaintiff Dep., Tab C, 73:5-10.)

6

*Mr. Gresham's Investigation and Decision to Terminate Plaintiff For Making a False Report*

32.    Immediately after Mr. Gresham received Plaintiff's complaint about Mr. Butron on October 28, he informed Brett Schulman, the Chief Executive Officer of CMG.   Mr. Schulman instructed Mr. Gresham to investigate the allegations by speaking with the people involved.  (Gresham Dep., Tab D, 46:21-47:2; Schulman Dep., Tab A, 32:8-33:6.)

33.    Mr. Gresham then contacted Ms. Arias and Ms. Bonilla by telephone and left them voicemails.  Mr. Gresham did not expect Ms. Bonilla to return his call because she did not speak English well.  (Gresham Dep., Tab D, 47:2-48:1.)

34.    After Mr. Gresham told Mr. Valdivia about Plaintiff's complaint, he asked Mr. Valdivia to try to get in touch with Ms. Bonilla and see if she would meet them in person, with Mr. Valdivia serving as translator.  (Gresham Dep., Tab D, 48:13-18, 50:2-4.)

35.    Mr. Valdivia was able to reach Ms. Bonilla and set up a meeting with her at a Panera Bread restaurant.  (Gresham Dep., Tab D, 48:21-22; Bonilla Dep., Tab E, 51:4-10.)[5]

36.    Mr. Gresham met with Ms. Bonilla at a Panera Bread Restaurant and asked her, with Mr. Valdivia translating, why she left Mosaic.  Ms. Bonilla responded that she left for a better paying job at Matchbox.  When asked whether she left because Mr. Butron told her he would only give her a raise in exchange for sex, Ms. Bonilla said that was not true and that she never said the statements attributed to her by Plaintiff.  (Gresham Dep., Tab B, 49:21-50:14, 62:3-63:15, Ex. 2, ¶ 10-11; Bonilla Dep., Tab E, 49:18-50:22.)

37.    Plaintiff admits that Ms. Bonilla denied that Mr. Butron propositioned her when asked about it by Mr. Gresham.  (Plaintiff Dep., Tab C, 103:18-104:4.)

---

[5] The relevant pages of the Deposition of Judith Estella Alvarez Bonilla ("Bonilla Dep.") are attached at Tab E.

38.     Both Mr. Butron and Ms. Bonilla confirm that Mr. Butron never told Ms. Bonilla that he would give her a raise in exchange for sex or otherwise propositioned her.  (Bonilla Dep., Tab E, 48:7-9; Butron Dep., Tab E, 40:2-7.)

39.     As part of his investigation, Mr. Gresham also called Ms. Arias again.  During his conversation with her, Ms. Arias explained that she left her employment at Mosaic because she lived far away.  When asked whether she left because Mr. Butron said he would give her a raise in exchange for sex, Ms. Arias laughed, said that never happened and whoever told Mr. Gresham that is lying.  (Gresham Dep., Tab B, 51:19-52:4, Ex. 2, ¶ 9.)

40.     Ms. Arias confirms that she never experienced harassment from anyone while working at Mosaic and never told Plaintiff that Mr. Butron said he would give her a raise in exchange for sex.  She left Mosaic because she found a job that was closer to home and paid more money.  (Arias Decl., Tab F)[6]

41.     To further investigate, Mr. Gresham informally spoke with Mr. Marinero and did not receive any information from Mr. Marinero that supported Plaintiff's allegations about Mr. Butron.  Mr. Marinero told Mr. Gresham that Ms. Bonilla left Mosaic for a better paying job and Ms. Arias left because her family is crazy.  (Gresham Dep., Tab B, 53:12-17.)

42.     Although Plaintiff alleged that Mr. Marinero had been present when Ms. Bonilla told Plaintiff that Mr. Butron had propositioned her, Mr. Marinero denies ever hearing Ms. Bonilla say that Mr. Butron offered her a raise in exchange for sex.  (Plaintiff Dep., Tab C, 83:3-7; Marinero Dep., Tab G, 25:21-26:8.)[7]

43.     Since Ms. Arias and Ms. Bonilla denied the allegations about Mr. Butron, and denied that they have ever made the allegations to Ms. Villa, Mr. Gresham concluded that Ms.

---

[6] The Declaration of Jessica Arias (Arias Decl.) is attached at Tab F.
[7] The relevant pages of the Deposition of Osmar Josue Marinero Moreno ("Marinero Dep.") are attached at Tab G.

Villa made up the allegations.  As a result, Mr. Gresham decided to terminate Ms. Villa's employment for fabricating the report against Mr. Butron.  (Gresham Dep., Tab B, 54:9-18.)

44.     On November 5, 2013, Mr. Gresham met with Plaintiff and Mr. Butron at Mosaic. Prior to the meeting, Mr. Gresham completed the disciplinary action form explaining the reason for his decision to terminate Plaintiff's employment, indicating "After an investigation by the Company, the Company has determined that Patty's accusation is false and has no merit.  As a result Patty's employment is terminated immediately."  (Gresham Dep., Tab B, 59:9-19, 60:13-61:4, Plaintiff Dep., Tab C, Ex. 9.)

45.     During the November 5 meeting, Mr. Gresham read the disciplinary action form to Plaintiff, explaining that he spoke with Ms. Bonilla and Ms. Arias and they both denied that Mr. Butron had offered them a raise in exchange for sex, and that as a result, he determined that Plaintiff made a false report regarding Mr. Butron.  (Gresham Dep., Tab D, 59:20-60:4, Plaintiff Dep., Tab C, 95:13-96:18, Ex. 9.)

46.     Mr. Gresham informed Plaintiff that her employment was terminated.  Plaintiff responded that she was sorry. (Gresham Dep., Tab D, 60:7-9.)

47.     Plaintiff admits that she did not take issue with Mr. Gresham's conclusion that she submitted a false report.  (Plaintiff Dep., Tab C, 96:15-21.)

48.     Mr. Butron did not participate in the decision to terminate Plaintiff's employment and first learned of Plaintiff's complaint and the allegations against him during the November 5 meeting with Mr. Gresham and Plaintiff.  (Butron Dep., Tab D, 40:19-41:13.)

49.     Plaintiff acknowledges that she does not know who conducted the investigation into the allegations she made in her complaint to Mr. Gresham, but thinks Mr. Valdivia conducted an impartial investigation because after she was terminated, Ms. Bonilla told her that

she spoke with Mr. Valdivia.   Plaintiff admits that she does not know if Mr. Gresham was present when Mr. Valdivia spoke to Ms. Bonilla.  (Plaintiff Dep., Tab C, 93:16-94:7.)

50.     Plaintiff also acknowledges that does not know who made the decision to terminate her employment.  (Plaintiff Dep., Tab C, 119:8-10.)

## ARGUMENT

**I.**     **Summary Judgment is Appropriate Where There Are No Genuine Issues Of Material Fact**.

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case.  *See* Fed. R. Civ. P. 56(a); *Hill v. Lockheed Martin Logistics Mgmt.*, 357 F.3d 277, 283 (4th Cir. 2004).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").  Rather, the non-moving party bears the burden of factually supporting each and every element of its claims, and of demonstrating that there is a genuine issue of material fact.  *Anderson*, 477 U.S. at 248.

"A 'material fact' is a fact that might affect the outcome of a party's case . . . [and] is determined by the substantive law[.]"  *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 520 (E.D. Va. 2013).  A party cannot create a genuine dispute of material fact through mere speculation or a compilation of inferences.  *Deans v. CSX Transportation*, 152 F.3d 326, 330-31 (4th Cir. 1998).  Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, disposition by summary judgment is appropriate. *Teamsters Joint Council No. 83 v. Central, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991).

## II.     Defendants Are Entitled to Summary Judgment Because The Uncontroverted Evidence is that Neither Plaintiff's October 29, 2013 Performance Review nor the <u>Termination of Her Employment Were Retaliatory.</u>

Plaintiff alleges that Defendants retaliated against her for engaging in protected activity, in violation of Title VII. Specifically, she alleges that Defendants gave her a written warning on October 29, 2013 and then terminated her employment on November 5, 2013 because she reported alleged supervisor sexual harassment of a co-worker. (ECF 11-1, ¶¶ 19, 22-23.) Title VII's three-part burden-shifting framework as laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) applies to Plaintiff's retaliation claims. *See Avent v. Kraft Foods Global, Inc.* 2012 U.S. LEXIS 116010, at \*18-19 (E.D. Va. Aug. 16, 2012).

First, a plaintiff can establish a *prima facie* case of retaliation by demonstrating "(1) that [she] engaged in protected activity, (2) that Defendants took an adverse employment action against [her], and (3) a causal connection between [her] engagement in the protected activity and the adverse action." *Ramos,* 963 F. Supp. 2d at 527 (citing *Ziskie v. Mineta,* 547 F.3d 220, 229 (4th Cir. 2008); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). If the plaintiff can satisfy her burden of proving a *prima facie* case of retaliation, "the burden then shifts to the defendant to 'rebut the presumption of retaliation by articulating a non-retaliatory reason for its action.'" *Currie v. Arthur*, 2012 U.S. Dist. LEXIS 68000, at \*27 (E.D. Va. May 15, 2012) (quoting *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998)). Where an employer successfully meets this burden, "then the prima facie case disappears and the burden shifts back to the plaintiff to show that the employer's proffered reason is pretextual." *Avent*, 2012 U.S. LEXIS 116010, at \*19 (citing *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004)).

To satisfy this burden, Plaintiff "must show that the articulated reason is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation." *Id.* (quotations and citations omitted).

As discussed more fully below, Plaintiff's well established performance issues resulted in the written warning, which was initiated and given by a supervisor who had no knowledge of her harassment complaint, and Defendants terminated Plaintiff's employment only after concluding that she had made a false report since both Ms. Bonilla and Ms. Arias denied they had ever been harassed by Mr. Butron or that they had told Plaintiff that they had been. Plaintiff also has presented no evidence whatsoever that Defendants' stated reasons were pretextual. Accordingly, summary judgment on Plaintiff's retaliation claims is appropriate.

> a. The Undisputed Facts Demonstrate That Defendants Did Not Retaliate Against Plaintiff By Issuing Her A Written Warning.

> i. The written warning was not an adverse action.

To establish a *prima facie* case of retaliation, Plaintiff must show that Defendants took an adverse employment action against her. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Consequently, a performance write-up that is not accompanied by some adverse change in the employee's compensation or other terms and conditions of employment does not constitute an adverse action for Title VII purposes. For example, in *Currie*, the plaintiff alleged that his former employer gave him a poor performance review and placed him on probation in retaliation for complaining about discrimination. *Currie*, 2012 U.S. Dist. LEXIS 68000, at *27-28. This Court held that the performance evaluation and placement on probation were not adverse employment actions, noting that "there is no evidence that Plaintiff's review detrimentally altered the terms and

conditions of his employment" and that Plaintiff did not even allege that the employer used the review or probationary period to later alter the terms and conditions of his employment.  *Id.* at *31-32.

Here, like in *Currie*, Plaintiff alleges that the October 29, 2013 written warning she received from Defendants constituted an adverse employment action.  (ECF 11-1, ¶ 19.)  It clearly did not.  The written warning was not accompanied by a reduction in Plaintiff's pay or benefits or any other change in the terms or conditions of her employment.  Nor was the written warning used as a basis to subsequently detrimentally alter the terms and conditions of her employment.  *See James*, 368 F.3d at 375.  For example, there is no evidence that Plaintiff received a decreased rate of pay or downgraded position with significantly less responsibilities in conjunction with or after receiving the written warning.  Further, Mr. Gresham made no mention of this written warning, or any of Plaintiff's other written or verbal warnings, when he terminated Plaintiff's employment, and there is no evidence that it was a factor in his determination to terminate her employment.  (S/F ¶¶ 45-46.)  *See Currie*, 2012 U.S. Dist. LEXIS 68000, at *33.  Because the written warning Plaintiff received on October 29, 2013 was not an adverse action, she cannot establish that it constituted unlawful retaliation for her complaint about Mr. Butron.

> ii.   The written warning was not causally related to Plaintiff's complaint to Mr. Gresham because the manager who gave Plaintiff the written warning <u>was unaware of her complaint to Mr. Gresham</u>.

To establish a *prima facie* claim that the written warning given to her on October 29, 2013 was retaliatory, Plaintiff must also come forward with evidence establishing a causal connection between her complaint to Mr. Gresham and the written warning.  *See Graves v. Indus. Power Generating Corp.*, 2011 U.S. Dist. LEXIS 871, at *50 (E.D. Va. Jan. 5, 2011)

("This requires first that the plaintiff prove that the employer knew that the plaintiff had engaged in a protected activity; such knowledge is 'absolutely necessary to establish the third element of the prima facie case.'") (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)); *see also Ramos*, 963 F. Supp. 2d at 528.

In *Jackson v. Nattrass*, 2014 U.S. Dist. LEXIS 100567, at *22-23 (E.D. Va. June 25, 2014), this Court granted summary judgment in the defendant-employer's favor and dismissed the plaintiff's retaliation claims, noting:

> Plaintiff has offered no evidence that Defendant had knowledge of either the alleged complaints; rather, Plaintiff relies upon argument and allegations in her pleadings. As discussed below, **knowledge is essential to a Title VII retaliation claim. If Defendant, the supervisor in charge of Plaintiff's discharge, did not have knowledge of the protected activity, Plaintiff cannot prevail on her claim**. Therefore, even assuming that the evidence does support Plaintiff's *prima facie* claim that she engaged in protected opposition activity, the retaliation claim must ultimately fail for lack of knowledge and a causal link.

(emphasis supplied.)

Plaintiff's retaliation claim regarding the written warning in this case fails for the same reason plaintiff's claim failed in *Jackson*. Plaintiff has presented no evidence that Mr. Butron, who decided to issue her the written warning, knew of her complaint to Mr. Gresham, at the time he gave her the written warning. Plaintiff admits that she does not know whether Gresham informed Mr. Butron or Mr. Valdivia of her complaint prior to the October 29 meeting with Plaintiff, and relies solely upon her speculation that Gresham informed them during a managers meeting (that she did not attend.) (S/F ¶ 31.) But, the uncontroverted evidence - - including the unrebutted testimony of both Mr. Gresham and Mr. Butron - - is that Mr. Gresham did *not* inform Mr. Butron of Plaintiff's complaint until the date of her termination, November 5, 2013, several days after he issued her the written warning. (S/F ¶¶ 30, 48.) Similarly, Mr. Valdivia

who participated in the October 29 meeting with Plaintiff to discuss the written warning, was not told of Plaintiff's complaint regarding Mr. Butron until *after* the meeting with Plaintiff.  (S/F ¶ 29.)  Plaintiff has not presented any evidence to refute these facts.  Because the evidence is uncontroverted that Mr. Butron, the decision maker, was unaware of Plaintiff's complaint to Mr. Gresham prior to issuing her the written warning on October 29, the warning could not have been in retaliation for her complaint.  Plaintiff's *prima facie* case of retaliation fails for lack of the requisite causal link.

> iii.  Defendants gave Plaintiff the October 29 written warning because of her poor performance and Plaintiff cannot demonstrate that the reason for the written warning was pretextual.

If Plaintiff could establish a *prima facie* case of retaliation (which she cannot), the burden of production would shift to Defendants to articulate a legitimate non-retaliatory reason for Plaintiff's written reprimand.  *Ramos*, 963 F. Supp. 2d at 529.  That burden is easily met here.

At the time she received the written warning on October 29, 2013, Plaintiff's performance in her role as Supervisor was below Defendants' expectations, and had been for an extended period.  Defendants had addressed their concerns with Plaintiff on several occasions.  Mr. Gresham first gave Plaintiff a written warning on April 9, 2013 for starting arguments with another supervisor.  (S/F ¶¶ 9, 14.)  In addition, Plaintiff struggled to meet Defendants' expectations of her as a Supervisor and they informed her several times of their concerns.  (S/F ¶¶ 15-20.)  Yet, despite meeting with Mr. Butron, Mr. Valdivia, and Mr. Cardona on several occasions in the fall of 2013 to discuss schedule flexibility, communication skills, and related issues, Plaintiff failed to improve her performance.  (S/F ¶¶ 15-20.)  Mr. Butron had known Plaintiff for several years and wanted to cut Plaintiff slack, so he provided her with informal counseling, rather than formal discipline.  (S/F ¶ 16.)  However, by the end of October 2013, Mr.

Butron reasonably concluded it was necessary to give Plaintiff a written warning so that she would understand the seriousness of her performance deficiencies and improve her performance. (S/F ¶¶ 25-27.)

To overcome Defendants' non-retaliatory reason for issuing a written warning to her, Plaintiff would need to establish that Defendants' proffered reason was merely a pretext for retaliation. *Ramos*, 963 F. Supp. 2d at 529. To do so, "Plaintiff must establish first that these legitimate reasons are not truthful and second that the real reason for the adverse action was Plaintiff's engagement in the protected activity." *Id.* (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

But, Plaintiff has not presented any evidence that Defendants' proffered reason for issuing her the written warning was pretextual. To the contrary, the evidence in the record reflects that Plaintiff's performance as a Supervisor did not improve despite Mr. Butron's repeated efforts to informally counsel her. (S/F ¶¶ 15-2.) It was only appropriate that Mr. Butron move forward with more formal discipline of Plaintiff, in the form of a written warning, because the restaurant could not continue to tolerate Plaintiff's poor communication skills and lack of commitment. (S/F ¶¶ 25-27.) Plaintiff has not and cannot refute these facts. Although she claims she does not remember the specifics of Mr. Butron's verbal counseling and denies that she was a poor performer, Plaintiff has presented no evidence that Mr. Butron issued the written warning to her because of her complaint to Mr. Gresham – or, more importantly, that Mr. Butron even knew that she had complained to Mr. Gresham at the time he issued the written warning, which he did not. *See Ramos*, 963 F. Supp. 2d at 530 (simply denying the employer's proffered reasons does not satisfy the plaintiff's burden of "demonstrating the employer was motivated by retaliation for engaging in protected activity."). Because Plaintiff has presented no

evidence that Defendants' proffered reasons for her written reprimand were pretextual, her claim of retaliation necessarily fails and summary judgment is appropriate.

      b.  <u>The Undisputed Facts Demonstrate That Defendants Did Not Retaliate Against Plaintiff By Terminating Her Employment</u>.

        i.  Defendants terminated Plaintiff because they reasonably concluded, after <u>investigating her allegations, that she had made a knowingly false report</u>.

Assuming for the purposes of this motion only that Plaintiff could establish a *prima facie* case of retaliation as to her termination, Defendants have met their burden of articulating a legitimate, non-retaliatory reason for terminating Plaintiff. *See Ramos*, 963 F. Supp. 2d at 529. After Plaintiff reported to Mr. Gresham that Ms. Bonilla and Ms. Arias left Mosaic because Mr. Butron requested sex from them in exchange for raises, Mr. Gresham immediately conducted an investigation into the allegations. (S/F ¶¶ 32-42.) Mr. Gresham asked Ms. Bonilla, using Mr. Valdivia as an interpreter, whether Mr. Butron asked her for sex in exchange for a raise, and she denied that he ever did so or that she told Plaintiff that he did so. (S/F ¶ 36.) Contrary to what Plaintiff had reported, Ms. Bonilla explained that she left Mosaic because she found a better paying job to help her family. (S/F ¶ 36.)

Mr. Gresham also asked Ms. Arias whether Mr. Butron asked her for sex in exchange for a raise. (S/F ¶ 29.) Ms. Arias denied the allegation or ever telling Plaintiff the allegation and, again contrary to what Plaintiff had claimed was the reason for Ms. Arias leaving Mosaic, Ms. Arias said that she left Mosaic because she found job closer to home. (S/F ¶¶ 39-40.) Mr. Gresham also spoke to Mr. Marinero, who Plaintiff claimed was present when Ms. Bonilla told Plaintiff about Mr. Butron, but Mr. Marinero said Ms. Bonilla left Mosaic because she found a better paying job (and he has subsequently confirmed that Mr. Bonilla he never said in his presence that Mr. Butron had asked her for sex in exchange for a raise). (S/F ¶¶ 41-42.) Based

on all of the information he gathered, Mr. Gresham reasonably concluded that Plaintiff made a false report of sexual harassment against Mr. Butron and decided to terminate Plaintiff's employment.  (S/F ¶¶ 43-44.)

      ii.  Plaintiff cannot demonstrate that the reason for the termination was <u>pretextual</u>.

"Plaintiff must establish first that these legitimate reasons are not truthful and second that the real reason for the adverse action was Plaintiff's engagement in the protected activity." *Ramos*, 963 F. Supp. 2d at 529 (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).  She cannot establish either.  At best, Plaintiff attempts "to create a genuine dispute of material fact through mere speculation or a compilation of inferences."  *Deans v. CSX Transportation*, 152 F.3d 326, 330-31 (4th Cir. 1998).  First, she speculates, incorrectly, that Mr. Valdivia conducted the investigation, and that the investigation was not impartial because Mr. Valdivia and Mr. Butron have been longtime friends.  (S/F ¶ 49; ECF 11-1 at ¶ 22.)  In fact, of course, Mr. Gresham - - not Mr. Valdivia - - conducted the investigation.  (S/F ¶¶ 32-42.)

Employees who complain of discrimination or harassment "may not claim retaliation simply because the employer undertakes a fact finding investigation."  *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d. Cir. 2014).  In *Ray v. Trans States Airlines*, 2002 U.S. Dist. LEXIS 22658, *12 (E.D. Mo. Oct. 10, 2002), the court held in the employer's favor in a case with nearly identical facts to the ones before this Court:

> Even if the Court were to find that plaintiff has established a *prima facie* case, she has not met her burden to demonstrate that defendant's reason for discharging her was a pretext for retaliation. Clark terminated plaintiff because he believed she submitted a false report of harassment with the intention of ruining Swoboda's career. **Clark interviewed the two individuals whom plaintiff claimed had witnessed Swoboda's offensive comment and neither of them supported plaintiff's allegation**. Clark also received Wegierski's report that plaintiff publicly stated she wished

> to harm the careers of three pilots, including Swoboda. While plaintiff disputes the contents of Wegierski's report, she does not claim that Clark doubted or had any reason to doubt Wegierski's veracity. Plaintiff has not put forward evidence which would support an inference that Clark was actually motivated by retaliatory animus when he terminated her employment.

(emphasis supplied.)   The only evidence Plaintiff offers to support her speculation that Defendants acted with retaliatory motive is that Ms. Bonilla told her she spoke with Mr. Valdivia.  (S/F ¶ 49.)  Plaintiff admits, however, that she does not know whether Mr. Gresham was present when Mr. Valdivia spoke to Ms. Bonilla.  (S/F ¶ 49.)  Plaintiff also admits that she does not know anything else about the investigation conducted by Defendants and does not know who made the decision to terminate her employment.  (S/F ¶¶ 49-50.)  Plaintiff offers no other evidence to establish pretext.

Finally, Plaintiff needlessly argues that she did not make a false report to Mr. Gresham. (ECF 11-1 at ¶ 21.)  In *Graves*, 2011 U.S. Dist. LEXIS 871, at *39-40, the defendant-employer offered legitimate, non-discriminatory and non-retaliatory reasons for terminating the plaintiff. Specifically, after conducting an investigation, the employer concluded that the plaintiff falsified his time card and lied about an absence.  *Id.* at *21.  The plaintiff argued that the real reasons for his termination was because his employer discriminated against him based on his race and retaliated against him for complaining about wages.  *Id.*  To support his argument, the plaintiff attempted "to prove that he did not falsify his time card and was not absent without authorization."  *Id.* at *40.   This Court dismissed the plaintiff's argument as lacking relevance and granted summary judgment for the employer on both the retaliation and discrimination claims, because the Court's "sole concern" was:

> "whether the reason for which the defendant discharged the plaintiff was discriminatory.  Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not

> our province to decide whether the reason was wise, fair, or even
> correct, ultimately, so long as it truly was the reason for the
> plaintiff's termination."

*Id.* (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)); *see also Avent*, 2012 U.S. LEXIS 116010, at *22-23 (applying the same standard to a retaliation claim where the employer terminated the plaintiff because it "reasonably believed" she falsified a doctor's note).

Although the facts are overwhelming that neither Ms. Bonilla nor Ms. Arias were ever harassed by Mr. Butron or ever told Plaintiff they were harassed, whether Plaintiff's report was false is ultimately of no relevance to her claim of retaliation.  The record shows unequivocally that Ms. Bonilla and Ms. Arias both denied to Mr. Gresham that they had been harassed by Mr. Butron or had ever told Plaintiff that they had been.  (S/F ¶¶ 36-40.)   Based on that information, Mr. Gresham reasonably concluded that Plaintiff did make a false report.  (S/F ¶¶ 43.)   Mr. Gresham had no basis at the time he made the termination decision to conclude that the allegations in Plaintiff's complaint were anything but false.  (S/F ¶¶ 32-42.)

Employers do not have supernatural powers to ascertain the truth.  They are required to investigate complaints of harassment and make reasoned determinations based on what they find. That is what Defendants did here.  The evidence overwhelmingly supports the conclusions that Ms. Bonilla and Ms. Arias were not harassed by Mr. Butron and did not tell Plaintiff that they had been.  Certainly, it is uncontroverted that both Ms. Bonilla and Ms. Arias told Mr. Gresham that they had not been harassed and had not told Plaintiff that they had been.  It was therefore reasonable for Defendants to conclude that Plaintiff had made a knowingly false report about Mr. Butron, and they were therefore entitled to terminate Plaintiff for that reason.  And, doing so was, as a matter of law, not retaliation, since there is no evidence to suggest that Mr. Gresham's investigation and resulting decision to terminate Plaintiff "was a pretext or subterfuge" or

"involved abusive methods or means designed to harass or retaliate against plaintiff."   *See Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 328 (D. Conn. 2014) (granting the employer's motion for summary judgment).   Accordingly, there is no genuine issue of material fact as to Plaintiff's claim that Defendants terminated her in retaliation for her participating in protected activity, summary judgment in Defendants' favor is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment, dismissing Plaintiff's Complaint in its entirety.

Dated:  October 9, 2015                           Respectfully submitted,

                                                CAVAMEZZE GRILL, LLC and
                                                CAVAMEZZE GRILL MOSAIC, LLC

                                                By their attorneys,

                                                /s/ David Barmak
                                                David Barmak (VSB#15853 )
                                                Alta M. Ray (VSB# 87023)
                                                MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                                                & POPEO, P.C.
                                                701 Pennsylvania Ave. NW, Suite 900,
                                                Washington, D.C. 20004
                                                Tel: (202) 585-3507
                                                Fax: (202) 434-7400
                                                DBarmak@mintz.com
                                                AMRay@mintz.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of October 2015, I caused the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment to be served via the ECF system on opposing counsel as follows:

> Matthew B. Kaplan
> The Kaplan Law Firm
> 509 N. Jefferson St.
> Arlington, VA 22205
> Tel: (703) 665-9529
> Fax: (888) 958-1366
> mbkaplan@thekaplanlawfirm.com
>
> Matthew K. Handley
> Dennis Corkery
> Christine Tschiderer
> WASHINGTON LAWYERS' COMMITTEE
> FOR CIVIL RIGHTS AND URBAN AFFAIRS
> 11 Dupont Circle, Suite 400
> Washington, DC 20036
> Tel: (202) 319-1000
> Dennis_Corkery@washlaw.org
> Mathew_handley@washlaw.org
> Christine_tschiderer@washlaw.org
>
> *Counsel for Plaintiff*

/s/ David Barmak
David Barmak

43532620v.5