IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PATRICIA VILLA,

                    Plaintiff,

       v.

CAVAMEZZE GRILL, LLC, *et al.*,

                    Defendants.

No: 1:15-cv-000222 (TSE/MSN)

**Plaintiff Patricia Villa's Opposition to Defendants' Motion for Summary Judgment**

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND.................................................................................2

II.   ARGUMENT.....................................................................................................5

  A. The Summary Judgment Standard .................................................................5

  B. Villa's October 29, 2013 Written Warning Is Irrelevant................................6

  C. Plaintiff has Stated a Claim for Retaliation ..................................................6

     1.  Villa's Report of Discrimination Was Protected Activity ...........................6

     2.  *McDonnell Douglas* Is Irrelevant ...........................................................8

     3.  Defendants are not Protected by their Investigation ..................................11

     4.  Defendants' Investigation was not Reasonable .........................................12

III.  PLAINTIFF'S RESPONSE TO LISTING OF UNDISPUTED FACTS.......................14

IV.   CONCLUSION ................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................5

*Armstrong v. Index Journal Co.*, 647 F.2d 441 (1980) ..................................................7

*Avent v. Kraft Foods Global, Inc.*, No. 3:11-CV-37, 2012 U.S. Dist. LEXIS 116010
(E.D. Va. August 15, 2012) ...................................................................................10

*Bearns v. Potter*, No. DKC 2006-3085, 2008 U.S. Dist. LEXIS 124129 (D. Md. Mar.
6, 2008) ...................................................................................................................10

*Betof v. Suburban Hosp.*, No. DKC 11-1452, 2012 U.S. Dist. LEXIS 90794 (D. Md.
June 29, 2012) ..........................................................................................................6

*Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264 (4th Cir. 2015) ...............................passim

*Burlington Norther. & Santa Fe Railroad. Co. v. White*, 548 U.S. 53 (2006) ...........................7

*Cassity v. Geren*, 749 F. Supp. 2d 380 (D.S.C. 2010) ....................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................5

*Crawford v. Metro. Government of Nashville & Davidson County*, 555 U.S. 271
(2009) ...............................................................................................................7, 12

*Currie v. Arthur*, No.: 1:11-cv-892, 2012 U.S. Dist. LEXIS 68000 (E.D. Va. May 15,
2012) ...................................................................................................................11

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, No. 1:13-cv-1246, 2014 U.S. Dist.
LEXIS 146449 (E.D. Va. Oct. 10, 2014) .....................................................................5

*EEOC v. Navy Federal. Credit Union*, 424 F.3d 397 (4th Cir. 2005) ...................................6

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...................................................12

*Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243 (4th Cir. 2015) ....................9

*Frazier v. US Airways, Inc.*, 2006 U.S. Dist. LEXIS 97071 (E.D. Va. Oct. 3, 2006) .................10

*Gonzalez v. State Department of Management Services*, No. 14-CV-22479, 2015 U.S.
Dist. LEXIS 112521 (S.D. Fla. Aug. 25, 2015) ..............................................................22

*Graves v. Industrial Power Generating Corp.*, No. 3:09cv717, 2011 U.S. Dist. LEXIS
871 (E.D. Va. Jan. 5, 2011) .....................................................................................10

*Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004) ..........................................11

*Harris v. Home Sales Co.*, 499 F. App'x 285 (4th Cir. 2012) ...........................................9

*Lettieri v. Equant, Inc.*, 478 F.3d 640 (4th Cir. 2007) ...................................................6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...............................................passim

*Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003) .........................................................6, 7

*Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) ........................................................10

*Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511 (E.D. Va. 2013) .............................8, 10

*Ray v. Trans States Airlines*, No. 4:01-CV-93, 2002 U.S. Dist. LEXIS 22658 (E.D.
Mo. Oct. 10, 2002) .................................................................................................11

*Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) .......................................................10

*Smith v. University of North Carolina*, 632 F.2d 316 (4th Cir. 1980) ..........................................9

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) ....................................................9

*Winful v. Medical University of South Carolina*, No. 2:13-cv-02150, 2015 U.S. Dist.
    LEXIS 130069 (D.S.C. Sept. 28, 2015) ...................................................................................9

**Statutes**

42 U.S.C. § 2000e–2(a) ..................................................................................................................7

42 U.S.C. § 2000e–3(a) ..................................................................................................................7

**Rules**

Fed R. Civ. P. 56 ............................................................................................................................5

**Treatises**

1-8 Lex K. Larson, Larson on Employment Discrimination ..........................................................9

In the fall of 2013 Plaintiff Patricia Villa, then an employee of Defendants CavaMezze Grill, LLC and CavaMezze Grill Mosaic, LLC (collectively "Cava"), was told by another employee, Judy Bonilla, that one of Defendants' managers had offered Bonilla a raise in exchange for sex. Villa reported what she had been told to Defendants' Director of Operations. That report was a protected activity under Title VII of the Civil Rights Act of 1964. Defendants acknowledge that they fired Villa for making that report, wrongly asserting that Villa was lying about what Bonilla told her. That dismissal, for engaging in a protected activity, violated Title VII.

Defendants now seek summary judgment on the grounds that Plaintiff cannot meet the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But Defendants fundamentally misunderstand the applicable legal standard. *McDonnell Douglas* is a pleading mechanism used to support an inference that adverse action was taken against an employee because of that employee's engagement in actions protected by Title VII (or because the employee was discriminated against) when the employee lacks direct evidence of such improper conduct. Here there is no dispute that Villa was fired because she reported alleged sexual harassment. Because the connection between Villa's firing and her reporting of harassment is undisputed, the necessary link between protected activity and Villa's dismissal is established without any need to rely on *McDonnell Douglas*. Consequently, Defendants' motion must be denied.

Defendants' apparent view is that, under *McDonnell Douglas*, they are not liable if their decision to fire Villa was based on a reasonable determination that Villa's sexual harassment report was false, regardless of whether it actually was false. This view would be wrong as a matter of law even if *McDonnell Douglas* applied—the relevant issue is not the quality of Cava's

1

investigation, but whether Villa acted in good faith when she reported what she had been told. Clearly she did—Bonilla admits that she made the statement to Villa that Villa reported.  But, aside from being legally wrong, Defendants premise, that it acted reasonably, although perhaps wrongly, when it branded Villa a liar has little factual support.  If required to reach the issue, a jury could readily conclude that Cava's investigation was unfair and unreasonable.

## I.    FACTUAL BACKGROUND[1]

Defendants own and operate a chain of fast casual dining establishments known as Cava Mezze Grill.  Plaintiff Villa began working for Defendants as a cashier at a Cava Mezze Restaurant in Tysons Corner, Virginia in approximately March 2012.  Attach. A (Rob Gresham Dep.) at 19.  In February 2013 she was promoted to be a supervisor and transferred to the Cava Mezze restaurant in Merrifield, Virginia.  Written Stipulation of Uncontested Facts ¶ 6 (Dkt. 42). On September 2, 2013 Villa received a pay raise.  Attach. B (Brett Schulman Dep.) at dep. ex. 8. According to Rob Gresham, Cava's Director of Operations, pay raises at Cava were awarded for "[o]utstanding work."[2]  Attach. A (Gresham Dep.) at 78.

---

[1] Defendants set out in their Memorandum in support of their Motion fifty purported undisputed material facts.  Most of these "facts" are irrelevant and some are untrue.  Nevertheless, in accordance with the Local Rules, a detailed response to each such assertion of fact is set out later in this Opposition.

[2] The Defendants' Chief Executive Officer ("CEO") and 30(b)(6) witness also highlighted the link between pay raises and performance:

    Q  And why would [Cava employees] receive a pay raise?
    A  Performance based.
    Q  So, if their performance is satisfactory, they would receive a
    pay raise?
    A  If it's above.
    Q  If it's above, they receive a pay raise?
    A  Above satisfactory.
Attach. B (Schulman Dep.) at 65-66.

2

On October 28, 2013 Villa reported by telephone to Gresham an alleged instance of sexual harassment.  Def. Mem. at 5 (¶ 21).  Villa told Gresham that one of her subordinates at the Merrifield restaurant, Judy Bonilla, had told her (Villa) that Marcelo Butron, the Merrifield restaurant's General Manager, had offered Bonilla a raise in exchange for sex.  *Id.*  Villa also reported that she suspected that a similar issue might account for the recent departure of another Cava employee, Jessica Arias, but did not claim any personal knowledge about the reason for Arias' departure.  Attach. C (Decl. of Patricia Villa) ¶ 2.  Villa was fired on November 5, 2013 because, according to the written personnel action documenting her firing, "the Company has determined that Patty's accusation is false and has no merit.  As a result Patty's employment is terminated immediately."  Attach. B (Schulman Dep.) at dep. ex. 9.

Bonilla testified at her deposition that, while it was not true that Butron had propositioned her, it *was* true that she had falsely told Plaintiff Villa that this had occurred:

> Q   … even though it wasn't true, you told Pati that Marcelo said he would give you a raise in exchange for sex?
>
> A   *Yes, I did tell her that*, but it's not the truth.

Attach. D (Dep. of Judith Bonilla) at 48-49 (emphasis added).  Bonilla explained that, at that time, she frequently told lies, because, according to her, she had a severe alcohol problem.  *Id.* at 72; *see also id.* at 47 ("And I did say that during the conversation [with Villa], but – but no, I always said things that weren't true.").  In their Memorandum in Support of Motion for Summary Judgment ("Mem.") (dkt. 38) Defendants inexplicably insist that "Bonilla denied the allegations about Mr. Butron, *and denied that [she] ever made the allegations to Ms. Villa.*"  *Id.* at 8 ¶ 43 (emphasis added); *see also id.* at 20 ("the facts are overwhelming that neither Ms. Bonilla nor Ms. Arias … ever told Plaintiff they were harassed"); *Id.* at 12 ("Ms. Bonilla and Ms.

Arias denied they had ever been harassed by Mr. Butron *or that they had told Plaintiff that they had been*.) (emphasis added).  Bonilla's deposition testimony is to the contrary.

Cava's investigation into the information that Villa reported was conducted by Director of Operations Gresham, the individual to whom Villa had reported the incident.  Attach. A (Gresham Dep.) at 44-47; Attach. B (Schulman Dep.) at 32-33.  Gresham testified that when Villa conveyed to him this report of harassment he immediately decided that someone was likely going to be fired—either Butron for harassment or Villa for making a false report.[3]  At the time of Villa's termination Cava had no written policy against sexual harassment and, consequently, no guidelines for how an investigation into harassment should be conducted.[4]  Gresham had no training in conducting sexual harassment investigations, he did not consult with any attorney about how the investigation should be conducted, and he did not consider the possibility that Bonilla might be reluctant to admit that her boss had propositioned her for sex.  *Id.* at 56-58.  Butron, the alleged harasser, was not asked if the harassment allegation against him was true.  *Id.* at 55.  During his investigation Gresham also did not interview Butron's Deputy General Manager or any female employees subordinate to Butron.  *Id.*  Villa was not interviewed in person or asked to submit any further information even though her ability to communicate with Gresham was limited because he spoke no Spanish and she spoke little English.  *Id.*  No notes or

---

[3] Gresham testified that he told Villa the following:  "I said this is very serious, I'll investigate, if it's true, Marcello [Butron] will be terminated, but if this isn't true and you are making it up … there is a good chance somebody is going to lose their job."  Attach. A (Gresham Dep.) at 44.

[4] Cava's then counsel told the Fairfax County Office of Human Rights and Equity Programs that "[t]he company did not maintain a formal written policy concerning sexual harassment during the period from November 5, 2012 through November 5, 2013."  Attach. A (Gresham Dep.) at dep. ex. 4.  Gresham confirmed that this statement was accurate.  Gresham Dep. 70-71.  ("Q: Is that statement correct?  A: Yes.").

other written records were kept during the course of the investigation.  *See, e.g.,* Attach. A (Gresham Dep.) at 51.

Because Gresham does not speak Spanish, he delegated the initial interview of Bonilla to Butron's immediate boss, Sergio Valdivia.  Attach. A (Gresham Dep.) at 48-49.  According to Butron, Valdivia is a "close friend[]" of his who he had known since the two began attending high school together in 2002.  Attach. E (Dep. of Marcelo Butron) at 44, 47-48.  At a subsequent interview of Bonilla by Gresham, Valdivia acted as interpreter.  Attach. A (Gresham Dep.) at 49-50.

## II.    **ARGUMENT**

### A.    **The Summary Judgment Standard**

As this Court has explained:

> Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56, Fed. R. Civ. P.  It is settled that "the burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 … (1986).  On the other hand, a genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 … (1986).

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, No. 1:13-cv-1246, 2014 U.S. Dist. LEXIS 146449, at *12 (E.D. Va. Oct. 10, 2014).  Importantly, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.…   The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Liberty Lobby*, 477 U.S. at 255.

**B.      Villa's October 29, 2013 Written Warning Is Irrelevant**

Defendants argue that a written warning Villa received on October 29, 2013, for purported conduct unrelated to her subsequent dismissal, cannot be the basis of a Title VII claim because this warning was not an actionable "adverse employment action."  But Defendants attack a straw man—Plaintiff does not assert (and did not assert in her Amended Complaint (dkt. 11-1)) that the warning was an adverse action entitling her to relief.

**C.      Plaintiff has Stated a Claim for Retaliation**

To establish a claim for retaliation under Title VII a plaintiff must prove "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events."  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (*en banc*) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *accord Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Betof v. Suburban Hosp.*, No. DKC 11-1452, 2012 U.S. Dist. LEXIS 90794 at *31 (D. Md. June 29, 2012).  A reasonable jury could conclude, based on the current record, that Villa has proven each of these elements.  Villa clearly suffered an adverse employment action— she was fired.  *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007) (dismissal is adverse employment action).  There is also an undisputed link between Villa's firing and her report of discrimination as Defendants acknowledge that her supposedly false report was the reason that she was fired.  Finally, there is abundant evidence to support a finding that Villa's report of harassment was a protected activity.

**1.      Villa's Report of Discrimination Was Protected Activity**

In addition to barring many forms of discrimination, Title VII makes it illegal for an employer to take action "against any individual … because he has opposed any practice made an

6

unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).  Among the

practices covered by that subchapter is sex discrimination.  42 U.S.C. § 2000e–2(a).  The anti-

retaliation provision "must be read 'to provide broader protection for victims of retaliation than

for [even] victims of race-based, ethnic-based, religion-based, or gender-based discrimination,'

because 'effective enforcement could . . . only be expected if employees felt free to approach

officials with their grievances.'"  *Boyer-Liberto*, 786 F.3d at 283 (quoting *Burlington N. & Santa*

*Fe Ry. Co. v. White*, 548 U.S. 53, 66-67, (2006)); (alterations by Fourth Circuit).  Consequently,

"[e]mployees engage in protected oppositional activity when, inter alia, they complain to their

superiors about suspected violations of Title VII."  *Id.* at 281 (quotations omitted); *see also*

*Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009) ("When an

employee communicates to her employer a belief that the employer has engaged in a form of

employment discrimination, that communication virtually always constitutes the employee's

opposition to the activity" and is protected) (quotations alteration and emphasis omitted);

*Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (1980) (protected activity includes "informal

protests, such as voicing complaints to employers or using an employer's grievance

procedures").  A report of discrimination is protected regardless of whether the allegedly

improper conduct is directed at the person filing the complaint or a third person.  *Betoff*, 2012

U.S. Dist. LEXIS 90794 at *33.

The ultimate factual accuracy of a plaintiff's good faith report of discrimination is

irrelevant.  Instead, "[t]he relevant inquiry is (1) whether the plaintiff *subjectively* (in good faith)

believed that the defendant engaged in an unlawful action; and (2) whether this belief was

*objectively* reasonable in light of the facts."  *Betoff*, 2012 U.S. Dist. LEXIS 90794, at *34-35

(citing *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003)) (emphasis in original); *accord*

7

*Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 528 (E.D. Va. 2013) (complaint is protected conduct if subjectively believed and objectively reasonable); *c.f. Boyer-Liberto*, 786 F.3d at 284 ("an employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress").

A jury could readily conclude that the report of sexual harassment Villa made to Defendants was both objectively and subjectively reasonable.  Certainly there is nothing inherently unbelievable about the purported offer of a pay raise in exchange for sex.  Moreover, there is compelling evidence that Villa's report of what she was told was truthful and, consequently, was made good faith.  Villa's testimony that Bonilla did in fact make the statement that she reported would be sufficient evidence for a jury to conclude that Villa was telling the truth.[5]  Attach. C (Villa Decl.) ¶ 2.  With Bonilla's admission that she actually did make this statement, the evidence of Bonilla's good faith is overwhelming.  Attach. D (Bonilla Dep.) at 48-49.

### 2.   *McDonnell Douglas* Is Irrelevant

Defendants insist that summary judgment must be granted because Plaintiff cannot make the showings required under the *McDonnell Douglas* burden shifting framework.  But *McDonnell Douglas* is inapposite.

The Supreme Court established the *McDonnell Douglas* framework because the conventional method of proving discrimination claims—with specific evidence of discrimination—"proved challenging in practice because of the need to show the state of mind of the defendant, which was difficult to do merely by presenting evidence of the employer's

---

[5] Villa says that she reported Bonilla's statement because she thought that the reported conduct was wrong and probably illegal.  Attach. C (Villa Decl.) ¶ 5.

actions."  1-8 Lex K. Larson, Larson on Employment Discrim. § 8.07[2]  "The Supreme Court

created the *McDonnell Douglas* framework to alleviate this problem, not to supplant the

traditional approach." *Id.*

The Fourth Circuit has endorsed this view:

> Title VII prohibits an employer from both (i) discriminating
> against an employee on the basis of sex, and (ii) retaliating against
> an employee for complaining about prior discrimination or
> retaliation.  Plaintiffs may prove these violations either through
> direct and indirect evidence of retaliatory animus, or through the
> burden-shifting framework of *McDonnell Douglas Corp. v.
> Green*…. **It is left to the plaintiff's discretion whether to proceed
> by direct and indirect evidence or by means of the McDonnell
> Douglas burden-shifting framework**.

*Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also Harris v.

Home Sales Co.*, 499 F. App'x 285, 290 (4th Cir. 2012) (same); *Trans World Airlines, Inc. v.

Thurston*, 469 U.S. 111, 121 (1985) ("the *McDonnell Douglas* test is inapplicable where the

plaintiff presents direct evidence of discrimination"); *Smith v. Univ. of N.C.*, 632 F.2d 316, 335

(4th Cir. 1980) (a case in which "a plaintiff introduces direct and/or circumstantial evidence of

discrimination," "simply does not fit the mold of the *McDonnell Douglas* formula").

Similarly, numerous district courts in this circuit have ruled that *McDonnell Douglas*

matters only when direct evidence is absent.  For example, *Cassity v. Geren*, 749 F. Supp. 2d 380

(D.S.C. 2010) *aff'd* 2010 U.S. Dist. LEXIS 112874 (D.S.C. 2010), resolved an argument similar

to what Defendants assert here—defendants in that case argued that the plaintiff was obligated to

use the *McDonnell Douglas* framework to prove their claim.  *Id.* at 402-03.  Noting that the

plaintiff had produced direct evidence of retaliation—she had been told that "if she pursued her

EEO complaints [defendant's agent] would make her life difficult"—the court denied summary

judgment without resort to *McDonnell Douglas*.  *Id.*; *see also Winful v. Medical Univ. of S.C.*,

No. 2:13-cv-02150, 2015 U.S. Dist. LEXIS 130069, at *10 (D.S.C. Sept. 28, 2015) ("A plaintiff

9

*lacking direct evidence* of retaliation may utilize the *McDonnell Douglas* framework to prove a claim of retaliation") (emphasis added) (citing *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)); *Bearns v. Potter*, No. DKC 2006-3085, 2008 U.S. Dist. LEXIS 124129, at *9 (D. Md. Mar. 6, 2008) ("A plaintiff may prove retaliation either with direct evidence of retaliation or with indirect evidence under the *McDonnell Douglas* burden-shifting method.") (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391-92 (4th Cir. 2001)); *Frazier v. US Airways, Inc.*, 2006 U.S. Dist. LEXIS 97071, at *10 (E.D. Va. Oct. 3, 2006) (*McDonnell Douglas* used "where plaintiff lack[s] any direct evidence of retaliation"). Even one of Defendants' principal cases makes the point that *McDonnell Douglas* is not used when there is "direct" evidence of a violation of the anti-discrimination laws. *Ramos*, 963 F. Supp. 2d at 522.[6]

In fact, several of the cases relied upon by Defendants illustrate how this case differs from those in which *McDonnell Douglas* is applied. In each of these Defendants-cited cases there was a dispute about why the plaintiff had been fired. In *Graves v. Industrial Power Generating Corp.*, No. 3:09cv717, 2011 U.S. Dist. LEXIS 871, at *39 (E.D. Va. Jan. 5, 2011), the plaintiff alleged that he was fired for discriminatory reasons, but had no evidence to rebut the defendant's contention that the true reason was that he had "purposefully falsified his time card and then lied about [it]." In *Avent*, 2012 U.S. Dist. LEXIS 116010, at *22, the plaintiff asserted that she was fired in retaliation for protesting discrimination, but had no evidence to rebut the defendant's contention that the true reason was that she had "falsified a doctor's note and violated the [company's] Attendance Program." And in *Currie v. Arthur*, No.: 1:11-cv-892,

---

[6] Moreover, *Avent v. Kraft Foods Global, Inc.*, No. 3:11-CV-37, 2012 U.S. Dist. LEXIS 116010 (E.D. Va. August 15, 2012), does not say that *McDonnell Douglas* always applies to retaliation claims, as Defendants imply. *See id.* at *18 ("Retaliation claims are ***generally*** analyzed under the burden-shifting framework of McDonnell Douglas") (emphasis added).

10

2012 U.S. Dist. LEXIS 68000, at *38 (E.D. Va. May 15, 2012), the plaintiff asserted that he was fired in retaliation for protesting discrimination, but had no evidence to rebut the defendant's contention that the true reason was that he had "violated numerous internal policies, including lying to investigators."[7]

This case is entirely different. Here there is no dispute as to why Villa was fired—Defendants admit that Villa was terminated for reporting discrimination. Consequently, *McDonnell Douglas* is irrelevant. As Defendants' Motion is premised on Plaintiff's supposed failure to meet her burden under *McDonnell Douglas*, a standard which does not apply, the Court need go no further to reject the Motion.

### 3.     Defendants are not Protected by their Investigation

However, even if Defendants' Memorandum could be construed as making the argument, independent of the *McDonnell Douglas* framework on which it relies, that Defendants are not liable because they conducted a reasonable investigation which found Villa to be a liar, that argument would fail as a matter of law. As set out above, binding precedent indicates that the issue is the reasonableness of Villa's decision to report the allegation of discrimination, not the reasonableness of Defendants' response to that report. *See, e.g., Boyer-Liberto*, 786 F.3d at 284

---

[7] Defendants only support for the applicability of *McDonnel Douglas* in an arguably analogous case is *Ray v. Trans States Airlines*, No. 4:01-CV-93, 2002 U.S. Dist. LEXIS 22658, at *12 (E.D. Mo. Oct. 10, 2002). However, even if correctly decided, *Ray*, an unpublished case from another circuit which, according to Lexis, has never been cited by any other court, is distinguishable. That court, apparently without objection from either party, applied *McDonnel Douglas* after correctly noting that this was the appropriate test to use "[i]n the absence of direct evidence of retaliation." *Id.* at *9; *see also Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) ("A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury"). Direct evidence is, of course, present here. Moreover, in *Ray* "plaintiff's continued unprofessional conduct and language" constituted independent grounds for the plaintiff's firing. 2002 U.S. Dist. LEXIS 22658, at *8.

(those who report discrimination are protected if they "reasonably believe[]" discrimination is occurring).

Indeed, this case exemplifies why Title VII prohibits the firing of an employee who makes a good faith report of sexual harassment. The "'primary objective,'" of Title VII "is not to provide redress but to avoid harm" *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998). As the Fourth Circuit has recognized, "early reporting" of discrimination by employees is "vital to achieving" this goal and should be "encourage[d]." *Boyer-Liberto*, 786 F.3d at 283. In this case, however, Gresham testified that, from the moment Villa reported to him what she had been told, he had decided that someone would likely be fired—Butron if the allegations were true or Villa if they were not. Attach. A (Gresham Dep.) at 44. But supervisors who engage in discriminatory conduct will often falsely deny what they have done and a truthful report of discrimination may be impossible to verify. Allowing a company to fire an employee who makes an honest report of apparent discrimination because that report cannot be substantiated would dramatically chill such internal reporting, a result inconsistent with Title VII's objective of encouraging good faith reporting. An employee who knows that such a report may lead to her dismissal is unlikely to report discrimination, especially discrimination involving a third person which causes that employee no direct harm. *See Crawford*, 555 U.S. at 279 ("[f]ear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination.").

### 4.   Defendants' Investigation was not Reasonable

Even if a company subject to Title VII were permitted to fire an employee acting in good faith for reporting discrimination if a reasonable company investigation determines that the

reporting employee was lying—a proposition unsupported by the case law—a jury could readily find that the investigation here was not reasonable.

An abundance of facts in the record support a reasonable inference that Gresham's investigation was inadequate:  Villa was never interviewed following her telephone report of what happened, even though it is unclear whether Gresham, who does not speak Spanish, fully understood what Villa had told him; Gresham had no training in conducting discrimination investigations, had no written antidiscrimination policy to guide him, never sought the advice of an attorney, never made any notes during the course of his investigation and did not question any female Cava employees about Butron's conduct.  Attach. A (Gresham Dep.) at 56-58.  In fact, Gresham did not even ask Butron whether he had made the statement that Bonilla attributed to him.  *Id.* at 55.  And, in addition to these failings, the first Cava representative to contact Bonilla during the investigation was Sergio Valdivia, a senior Cava manager and close personal friend of Butron, a circumstance likely to discourage Bonilla from honestly discussing any misconduct by Butron.  Attach. E. (Butron Dep.) at 44, 47-48.  Valdivia also participated as an interpreter in the subsequent meeting between Bonilla and Gresham.  *Id.*

Gresham does not seem to have considered the possibility that Villa was honestly reporting what she had been told but that the underlying allegation, Bonilla's claim that Butron had propositioned her, was inaccurate.  This is puzzling because, despite Defendants' dubious claim that Villa was not a good manager, nothing in her personnel file indicates that, prior to her report to Gresham, Cava had any concern about her honesty or integrity.  In contrast, Bonilla herself testified that, in the fall of 2013, she was constantly lying because of alcohol abuse and

13

that this abuse was known to others at the company.[8]  Ex. C (Bonilla Dep.) at 72.  Moreover,

there was reason to believe that Bonilla might be biased against Villa—Villa had previously

given Bonilla a "writeup" for coming to work late.  *Id.* at 71.

III.    **PLAINTIFF'S RESPONSE TO LISTING OF UNDISPUTED FACTS**

Pursuant to Local Rule 56(B), Plaintiff sets out below her responses to Defendants'

listing of what Defendants assert to be "[u]ndisputed" facts.  The responses below are keyed to

paragraphs numbered 1-50 on pages 2-10 of Defendants' Memorandum of Law.

Paragraph 1
Plaintiff does not dispute the assertions in this paragraph.[9]

Paragraph 2
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 3
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 4
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 5
Plaintiff does not dispute the assertions in this paragraph.

---

[8] As Bonilla explained
        A:    There were just rumors floating around like, oh, Judy
        drinks a lot.
        Q:    Rumors floating around Cava?
        A:    Uh-huh.  Yes.
Attach. D (Bonilla Dep.) at 73.
[9] Plaintiff's failure to dispute certain of Defendants' assertions does not mean that Plaintiff accepts these assertions as true.  Plaintiff, however, has no objection to the Court considering such assertions to be true for purposes of this Motion.

Paragraph 6

      Plaintiff does not dispute the assertions in this paragraph.

Paragraph 7

      Plaintiff does not dispute the assertions in this paragraph except that Plaintiff disputes any suggestion that the Cava Restaurants do not operate as a single enterprise.  Extensive evidence indicates that Cava operated as a single enterprise.  For example, Chief Operating Officer Gresham testified that Cava had numerous written policies on a variety of subjects and that, to the best of his knowledge, each such policy applied to all Cava restaurants and there are no specific policies that apply only to individual restaurants.  Attach. A (Gresham Decl.) at 76-77.

Paragraph 8

      Plaintiff does not dispute the assertions in this paragraph.

Paragraph 9

      Plaintiff disputes the assertion that there is uncontradicted evidence that Plaintiff's "work performance began to decline."  Plaintiff's testimony is to the contrary.  Attach. C (Villa Decl.) ¶ 3.  Moreover, Plaintiff was given a pay raise on September 2, 2013, well after she assumed her duties as a supervisor in February of that year.  Attach. B (Schulman Dep.) at dep. ex. 8.  Defendants' CEO and corporate representative testified that Cava employees would only receive pay raises if their performance was "[a]bove satisfactory."  *Id.* at 65-66.

Paragraph 10

      Plaintiff does not dispute the assertions in this paragraph.

Paragraph 11

      Plaintiff does not dispute the assertions in this paragraph.

<u>Paragraph 12</u>

Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 13</u>

Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 14</u>

Defendants' assertion that "Ana Valdivia, the General Manager of the Tyson's Corner restaurant, warned Mr. Butron that Plaintiff had been a problematic employee under her supervision" is not an undisputed fact.  To the extent that Defendants' point is that Villa was a "problematic employee" this "fact" is based on inadmissible hearsay—what Valdivia (who provided no testimony) supposedly told Butron.  To the extent that Defendants assert this "fact" not for the truth of the assertion, but to show that the statement was actually made, this "fact" is irrelevant.  Moreover, Villa's promotion at the time she was transferred from the Tyson's Corner restaurant to the Merrifield restaurant, Written Stipulation of Uncontested Facts ¶ 6 (Dkt. 42), could lead a reasonable jury to conclude that Villa was not a problem employee while at the Tysons Corner location.


<u>Paragraph 15</u>

There is not undisputed evidence that "Plaintiff's performance as Supervisor at Mosaic was poor."  Plaintiff's testimony is to the contrary.  Attach. C (Villa Decl.) ¶ 3.  Moreover, Plaintiff was given a pay raise on September 2, 2013, well after she assumed her duties in February of that year.  Attach. B (Schulman Dep.) at dep. ex. 8.  Defendants' CEO and corporate representative testified that Cava employees would only receive pay raises if there performance was "[a]bove satisfactory."  *Id.* at 65-66.

16

Paragraph 16

      It is not undisputed that "Mr. Butron attempted to take an informal approach to evaluating Plaintiff's performance and 'cut her some slack.'"  Plaintiff disputes the implied assertion that there were performance issues necessitating such "slack."  Attach. C (Villa Decl.) ¶ 3.

Paragraph 17

      It is not undisputed that "[o]n September 24, 2013, Mr. Butron and Juan Cardona, the Assistant Manager at Mosaic, had an informal meeting with Plaintiff to discuss performance expectations, specifically Plaintiff's "lack of organizational and leadership skills."  Ms. Villa testifies that such a meeting did not occur.  Attach. C (Villa Decl.) ¶ 4.  Moreover, the Defendants-cited document supposedly recounting this meeting was admittedly not prepared contemporaneously, is not dated, was not prepared on the form Cava regularly used for recording such counseling sessions and was not signed by Villa even though it was Cava's policy that records of counseling sessions should be signed by the affected employee.  Ex. B (Schulman Dep.) at 68-70 (discussing form to be used and requirement of employee signature); Ex. E (Butron Dep.) at 27-34 (discussing preparation of relevant memo).  This document was also not produced in electronic form, which might have included metadata indicating the date on which it was actually created, supposedly because the electronic version was lost due to a virus.  Ex. E (Butron Dep.) at 30.  A jury could reasonably conclude that Butron, the purported sexual harasser, created this document not to reflect an actual meeting or the truth of any matters discussed, but to establish a pretext for firing Villa.

Paragraph 18

      It is not an undisputed fact that "[o]n October 8, 2013, Mr. Butron and Mr. Cardona had another informal meeting with Plaintiff regarding her performance, specifically Plaintiff's

17

'availability, new hires and training, [and] lack of communication.'"  Ms. Villa testifies that such a meeting did not occur.  Attach. C (Villa Decl.) ¶ 4.  Moreover, the Defendants-cited document supposedly recounting this meeting was admittedly not prepared contemporaneously, was not dated, was not prepared on the form Cava regularly used for recording such counseling sessions and was not signed by Villa even though it was Cava's policy that the affected employee should sign records of counseling sessions.  Ex. B (Schulman Dep.) at 68-70 (discussing form to be used and requirement of employee signature); Ex. E (Butron Dep.) at 27-34 (discussing preparation of relevant memo).  This document was also not produced in electronic form, which might have included metadata indicating the date on which it was actually created, supposedly because the electronic version was lost due to a virus.  Ex. E (Butron Dep.) at 30.  A jury could reasonably conclude that Butron, the purported sexual harasser, created this document not to reflect an actual meeting or the truth of any matters discussed, but to establish a pretext for firing Villa.

Paragraph 19
        Plaintiff does not dispute the assertions in this paragraph.

Paragraph 20
        It is not an undisputed fact that "[o]n October 17, 2013, Mr. Valdivia and Mr. Butron had an informal meeting with Plaintiff regarding her reoccurring performance issues, specifically "shift control, lack of knowledge and availability."  Ms. Villa testifies that such a meeting did not occur.  Attach. C (Villa Decl.) ¶ 4.  Moreover, the Defendants-cited document supposedly recounting this meeting was admittedly not prepared contemporaneously, was not dated, was not prepared on the form Cava regularly used for recording such counseling sessions and was not signed by Villa even though it was Cava's policy that records of counseling sessions should be signed by the affected employee.  Ex. B (Schulman Dep.) at 68-70 (discussing form to be used and requirement of employee signature); Ex. E (Butron Dep.) at 27-34 (discussing preparation of

18

relevant memo).  This document was also not produced in electronic form, which might have included metadata indicating the date on which it was actually created, supposedly because the electronic version was lost due to a virus.  Ex. E (Butron Dep.) at 30.  A jury could reasonably conclude that Butron, the purported sexual harasser, created this document not to reflect an actual meeting or the truth of any matters discussed, but to establish a pretext for firing Villa.

Paragraph 21
       Plaintiff does not dispute the assertions in this paragraph.

Paragraph 22
       It is not an undisputed fact that "[d]uring that conversation, Plaintiff also reported to Mr. Gresham that Jessica Arias, a former Mosaic employee, left Mosaic because Mr. Butron told her Ms. Arias he [sic] would give her a raise in exchange for sex."  Plaintiff testifies that she expressed concern to Gresham that, in light of what Bonilla had reported to her, she was concerned that it was *possible* that Ms. Arias had left because of sexual harassment.  Ex. C (Villa Decl.) ¶ 2.  It is certainly reasonable to think that Gresham may have misunderstood Bonilla as Bonilla's English is limited and Gresham speaks no Spanish, Ms. Villa's principal language.  *Id.*

Paragraph 23
       It is not an undisputed fact that Plaintiff led Gresham to believe that Ms. Arias had told Villa that Butron had asked her for sex.  Plaintiff testifies that she expressed concern to Gresham that, in light of what Bonilla had reported to her, that it was possible that Ms. Arias had left because of sexual harassment.  Ex. C (Villa Decl.) ¶ 2.  Defendants cite Villa's deposition testimony to support this supposed fact, but that testimony does not say that Villa ever told Gresham that Arias had told her that that she had been harassed by Butron.  Villa said that "I speculated [to Gresham] that this other lady" was in a similar situation "but I didn't say if for sure."  Attach. F (Dep. of Patricia Villa) at 90; *see also id.* ("she *may* have left for the same

19

reason") (emphasis added).  A jury might conclude that Gresham misunderstood Bonilla as

Bonilla's English is limited and Gresham speaks no Spanish, Ms. Villa's language.  .  Attach. C

(Villa Decl.) ¶ 2.


<u>Paragraph 24</u>

   Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 25</u>

   Plaintiff does not dispute that Butron gave Villa a written warning.  However, to the

extent it is relevant, it is not an undisputed material fact that the asserted reasons for this warning

were the actual reasons for this warning.  Given that this warning was provided to Villa by

Butron the day after she reported allegations of possible sexual harassment by Butron, a

reasonable jury could conclude that the asserted reasons for the warning were pretextual and that

the actual reason was the report made by Villa.


<u>Paragraph 26</u>

   Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 27</u>

   Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 28</u>

   Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 29</u>

   Plaintiff does not dispute the assertions in this paragraph.


<u>Paragraph 30</u>

   Plaintiff does not dispute the assertions in this paragraph.

Paragraph 31
It is not true that Plaintiff "admits" that she "does not have any evidence to support her belief that Mr. Butron knew that she made a complaint to Mr. Gresham prior to issuing the written warning to her." In fact, Villa testified that Butron's attitude towards her and the timing of the meeting gave her reason to believe that he did know of her complaint. Attach. F (Dep. of Patricia Villa) at 73.

Paragraph 32
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 33
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 34
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 35
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 36
Plaintiff does not dispute the assertions in this paragraph.

Paragraph 37
To the extent that it is of any relevance, the assertion that "Plaintiff admits that Ms. Bonilla denied that Mr. Butron propositioned her when asked about it by Mr. Gresham" is misleading. Plaintiff's testimony was that Bonilla acknowledged to her that she had lied to Gresham in denying that Butron had asked her for sex. Attach. F (Villa Dep.) at 103-04.

Paragraph 38
It is not true that Bonilla "confirm[ed] that Mr. Butron never told Ms. Bonilla that he would give her a raise in exchange for sex or otherwise propositioned her." Bonilla claimed that

21

her statement that Butron had offered her a raise in exchange for sex was false.  Ex. C (Bonilla

Dep.) at 48-49.  But she affirmatively acknowledged making such a statement to Villa.  ("Yes, I

did tell her that).  *Id.*

Paragraph 39

      Plaintiff does not dispute the assertions in this paragraph except that, in accordance with

the hearsay rule, Arias' purported statements to Gresham cannot be used to show that the facts

asserted in those statements are true.

Paragraph 40

      To the extent that it is relevant, it is not an undisputed material fact that "Ms. Arias

confirms that she … never told Plaintiff that Mr. Butron said he would give her a raise in

exchange for sex."  Defendants support this assertion by citing to a May 27, 2015 Declaration by

Arias.  Defs.' Mem. Ex. F.  But Defendants previously asserted that this document was

privileged and, on that ground, refused to turn it over to Plaintiff.  *See* Attach. G, CavaMezze

Grill, LLC's and CavaMezze Grill Mosaic's Privilege Log (Aug. 26, 2015).  Having shielded

this document in discovery by a privilege claim, Defendants may not now use it as a sword to

attack Plaintiff.  *See Gonzalez v. State Dep't of Mgmt. Servs.*, No. 14-CV-22479, 2015 U.S. Dist.

LEXIS 112521, at *21 (S.D. Fla. Aug. 25, 2015) (criticizing Plaintiff who attempted to use

Declaration that he had previously refused to disclose to support the party's position on a

summary judgment motion "in what appears to have been a tactical decision to ambush the

Defendant.").

Paragraph 41

      Plaintiff does not dispute the assertions in this paragraph except that, in accordance with

the hearsay rule, Osmar Marinero's purported statements to Gresham cannot be used to show

that the facts asserted in those statements are true.

Paragraph 42

Plaintiff does not dispute the assertions in this paragraph except that, in accordance with the hearsay rule, Osmar Marinero's purported statements to Gresham cannot be used to show that the facts asserted in those statements are true.

Paragraph 43

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 44

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 45

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 46

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 47

The assertion that "Plaintiff admits that she did not take issue with Mr. Gresham's conclusion that she submitted a false report" is misleading.  Plaintiff actually testified that she did not respond "because I … I went into shock."  Ex. F (Villa Dep.) at 96.

Paragraph 48

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 49

Plaintiff does not dispute the assertions in this paragraph.

Paragraph 50

Plaintiff does not dispute the assertions in this paragraph.

IV.     **CONCLUSION**

For the reasons set out above, Defendants' Motion should be denied.

Dated:  October 30, 2015            Respectfully,

By       /s/Matthew B. Kaplan        

Matthew B. Kaplan VSB No. 51027
The Kaplan Law Firm
509 N. Jefferson St.
Arlington, VA 22205
Telephone: (703) 665-9529
Fax: (888) 958-1366
Email:  mbkaplan@thekaplanlawfirm.com
*Counsel for Plaintiff Patricia Villa*

Dennis Corkery
Christine Tschiderer
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, Suite 400
Washington, DC 20036
Tel: (202) 319-1000
Dennis_Corkery@washlaw.org
Christine_tschiderer@washlaw.org
*Counsel for Plaintiff Patricia Villa*

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below, the foregoing Document (including any attachments) was filed and served via the Court's CM/ECF system upon all Parties who have appeared in this matter.


___/s/Matthew B. Kaplan_____

Date:  October 30, 2015

25