IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PATRICIA VILLA,                          )
                                         )
                         Plaintiff,      )
                                         )
v.                                       ) CIVIL ACTION
                                         )
CAVAMEZZE GRILL, LLC, et al              ) 1:15-cv-222
                                         )
                         Defendant.      )
_____)

REPORTER'S TRANSCRIPT

<u>MOTIONS HEARING</u>

Friday, November 13, 2015

---

<u>BEFORE</u>:        THE HONORABLE T.S. ELLIS, III
                 Presiding

<u>APPEARANCES</u>:   MATTHEW BRYCE KAPLAN, ESQ.
                 The Kaplan Law Firm
                 509 N. Jefferson Street
                 Arlington, VA 22205

                     For the Plaintiff

                 DAVID BARMAK, ESQ.
                 ALTA M. RAY, ESQ.
                 Mintz, Levin, Cohn, Ferris,
                 Glovsky and Popeo, P.C.
                 701 Pennsylvania Ave, NW
                 Suite 900
                 Washington, DC 20004

                     For the Defendant

                     ---

                 MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                 Official Court Reporter
                 USDC, Eastern District of Virginia
                 Alexandria Division

```
 1                THE CLERK:  Patricia Villa versus Cavamezze

 2    Grill.  Civil Action No. 1:15-CV-222.

 3                THE COURT:  All right.

 4                Who is here for the plaintiff.

 5                ATTORNEY KAPLAN:  Good afternoon, your

 6    Honor.

 7                Matthew Kaplan for plaintiff, Villa.

 8                THE COURT:  I'm sorry, your name, sir?

 9                ATTORNEY KAPLAN:  Matthew Kaplan.

10                THE COURT:  All right.

11                Mr. Kaplan, good afternoon.

12                And for the defendant?

13                ATTORNEY BARMAK:  Good afternoon, your

14    Honor.  For the defendant, David Barmak and my

15    colleague, Alta Ray.

16                THE COURT:  All right.

17                The hour is a bit late, so I am going to do

18    it this way:  This is a retaliation issue.  I think I

19    have in mind the parties' briefs and contentions.  I am

20    going to give you no more than 15 minutes to tell me

21    what you think I should know that you think needs

22    emphasis from the briefs or that -- and you'll have the

23    opportunity, Mr. Barmak, to respond, so you better save

24    some of your 15 minutes.

25                ATTORNEY BARMAK:  Indeed, your Honor, I
```

1    don't think I'll need 15 minutes at all.

2                    THE COURT:  All right.

3                    ATTORNEY BARMARK:  For the most part I think

4    we can rest on our brief.  I just want to focus on the

5    essential elements of what I think, based on the

6    briefing, is now in dispute.

7                    What is not in dispute are the facts central

8    to the retaliation claim, and that is that Ms. Villa was

9    terminated after Cava investigated her report of

10   harassment and determined she had fabricated it, and

11   based on that determination they fired her.

12                   What is in dispute is a different view of

13   the law.  Plaintiff says that she gets protection

14   because she engaged in protected activity because she,

15   in fact, believed that what she told Cava was correct,

16   and they say that is the only relevant issue.  It

17   doesn't matter what Cava believed.

18                   The law, in fact, however, is that it does

19   matter what Cava believed, that Cava had to have had

20   retaliatory animus.  In terminating her, it had to do so

21   because it wanted to retaliate against her protected

22   activity.

23                   That is really the issue before the Court,

24   and we submit respectfully that there is not much of an

25   issue at all because the law is very clear that in

1    looking at the law of retaliation, while plaintiff's

2    protected activity is a necessary condition of her

3    claim, it is not sufficient.

4          She has to have engaged in protect activity,

5    but then to be liable, Cava had to have terminated her

6    in retaliation for that activity, i.e., as some of the

7    cases say, with retaliatory animus.

8          So what do we know here based on the facts?

9    On October 28, 2013, plaintiff told Rob Gresham, the

10   Director of Operations, at Cava that another woman,

11   Judith Bonilla had told her, the plaintiff, that she had

12   been harassed by Mr. Butron.  Gresham said he had would

13   investigate that.

14         He did investigate it.  He talked to

15   Bonilla.  Each also talked to a woman named Jessica

16   Arias, who allegedly had been harassed as well, and to

17   others; and based on those discussions, he concluded

18   when Bonilla told him in a meeting not only did the

19   harassment not occur, but I never told Pati, the

20   plaintiff, that it had ever occurred.

21         He concluded that Ms. Villa had made up the

22   allegations and that they were fabricated, and he

23   decided to terminate her for fabricating her report.

24   These facts are set forth in our statement of facts at

25   paragraphs 21, 24, 36, 37, and 43, 43 being the most

1    salient because it says very clearly that Gresham

2    concluded that Villa had made up the allegations and

3    decided to terminate plaintiff for fabricating the

4    report.

5              Each and every one of those statements of

6    facts, your Honor, each and every one is undisputed by

7    plaintiff.  In their opposition, as required by the

8    local rules, they had to address each of our statements

9    of fact, they did that, and they acknowledged that those

10   are the facts.

11             They did that because they come back and

12   argue, "Well, it doesn't matter that you believed that

13   she fabricated it."  What really matters is whether she

14   did, in fact fabricate it because if she didn't, then no

15   matter what you -- Cava believed she engaged in

16   protected activity.

17             THE COURT:  She did engage in protected

18   activity.  There is no doubt about that.

19             ATTORNEY BARMARK:  I think that were this

20   case to go to trial we would -- we would dispute that,

21   in fact, she had a good faith belief.  But for purposes

22   of this motion we grant that, that she engaged in

23   protected activity; but, as we have addressed in our

24   brief, the other element then, is that why she was

25   terminated?  Was she terminated for filing a report?

1    No.  She was terminated for filing what Cava concluded

2    was a false report.

3            And while plaintiffs extraordinarily claim

4    in their papers that that's irrelevant, that the only

5    issue was whether she engaged in protected activity,

6    it's crystal clear that it is far from irrelevant, it is

7    critical to know what was the causative factor and basis

8    for Cava's decision.

9            The Supreme Court in Nassar ruled,

10   unequivocally, in 2013 that the standard in retaliation

11   cases under Title VII is a but-for test that requires a

12   showing of retaliatory animus.

13           That was acknowledged in the Foster case

14   earlier this year, in January 2015, when the Fourth

15   Circuit said that the Nassar standard, which was a

16   direct-evidence standard, also applies in Title VII

17   cases under the McDonnell Douglas framework, where

18   ultimately plaintiff must prove the same thing, that she

19   was terminated because of retaliatory animus because of

20   an intention by the employer to terminate her or take

21   other adverse action based on her protected activity.

22           But here they have stipulated that away, as

23   they should, because there is no evidence of retaliatory

24   animus.  They have agreed that the evidence is

25   undisputed that the basis for the termination was not

1    that she filed a report, but that she fabricated the

2    report.  In order to save --

3              THE COURT:  If you want to save three or

4    four minutes, you better bring it to a close.

5              ATTORNEY BARMAK:  I will do that, your

6    Honor.

7              They try to save their position by

8    nitpicking the investigation; but, again, as we cited in

9    our papers, there are various cases that make very clear

10   that the employer's -- the exact way the employer went

11   around the -- about the investigations is not subject to

12   second-guessing by the court.  Here it's very clear they

13   did do an investigation.

14             They got the report from both alleged

15   victims that they had not in fact been harassed.  Miss

16   Bonilla also said she had never told Patty that.  That

17   alone provided a basis for their determination that Ms.

18   Villa had fabricated her report.

19             THE COURT:  All right.  Mr. Kaplan.

20             ATTORNEY KAPLAN:  I think I agree with

21   Mr. Barmak that the central issue here is an issue of

22   law.  Their position, as I understand it, is that there

23   can be no violation of Title VII if the defendants

24   honestly believed that Ms. Villa's report was false.  It

25   doesn't matter how irrational, how poorly they conducted

1    their investigation.  If that was their honest belief,

2    according to them, there is no violation of Title VII.

3              That's not the law, certainly not the law in

4    this circuit.  Both the statute and the case law

5    indicate that.  If you look at 42 U.S.C. 2000e-3, which

6    is the anti-retaliation provision, it says that, "It

7    shall be an unlawful employment practice for an employer

8    to discriminate against any of its employee or

9    applicants for employment because he has opposed any

10   practice made an unlawful employment practice by this

11   subchapter."

12             There is no exception for -- if the employer

13   thinks that the person reporting the discrimination is

14   lying.  I think courts often use the words "animus" and

15   "retaliation," which sort of implies that there needs to

16   be some sort of scienter, that there needs to be some

17   kind of bad intention on the part of the person who --

18   part of the company that takes the unfavorable

19   employment action.

20             But there is no scienter requirement.  The

21   statute is very clear, if she was dismissed because of

22   protected activity, that's a violation of the statute.

23             Now, I think what the defendants miss is

24   there can be more than one but-for cause of an event

25   happening.  Clearly, her report was a but-for cause of

1    her dismissal.  Her report of sexual harassment was a

2    but-for cause of dismissal.  If she hadn't made that

3    report, no dismissal would have occurred.

4            Maybe the defendants are right and maybe

5    their belief, the good faith belief that she was lying,

6    maybe that's also a but-for cause.  There's no reason

7    there needs to be one but-for cause.

8            Also, you know, they have cited a few cases

9    that support their position.  Those cases aren't from

10   the Fourth Circuit.  I think the Fourth Circuit is --

11   I'm not sure the other cases disagree with the Fourth

12   Circuit, but we cited Peter versus Jenney, which is a

13   2003 Fourth Circuit case, same or very similar language

14   is in Boyer versus Liberto.

15           THE COURT:  What's in that case that you

16   rely on?

17           ATTORNEY KAPLAN:  I'm sorry?

18           THE COURT:  What is that case.

19           ATTORNEY KAPLAN:  Peter versus Jenney -- the

20   language specifically is --

21           THE COURT:  What were the facts, and what

22   was the holding?  Why do you rely on it?

23           ATTORNEY KAPLAN:  In Boyer versus Liberto,

24   the Court of Appeals changed previous Fourth Circuit law

25   because it felt that it was --

```
 1              THE COURT:  I'm sorry.  Let's go back to,
 2    you are talking about the Boyer-Liberto case in 786?
 3              ATTORNEY KAPLAN:  Yes.
 4              THE COURT:  What were the facts of that
 5    case, if you know?
 6              ATTORNEY KAPLAN:  The facts of the case,
 7    your Honor, were the issue was, I think it was --
 8              THE COURT:  I didn't ask you the issue.
 9    What were the facts of that case?
10              ATTORNEY KAPLAN:  I believe that the
11    plaintiff in that case alleged that there had been
12    references to black individuals as porch monkeys, and
13    that individual reported what had happened to her
14    superiors.  And under existing Fourth Circuit law, the
15    initial panel that heard the of case said that that was
16    not sufficient because she did not have a reasonable
17    belief that those isolated remarks would establish a
18    hostile work environment.
19              The Fourth Circuit --
20              THE COURT:  Well, it's a hostile work
21    environment.
22              ATTORNEY KAPLAN:  It is a hostile work
23    environment, yes, yes.
24              THE COURT:  All right.  Go on.
25              ATTORNEY KAPLAN:  But the Fourth Circuit
```

1    said there's a very important policy issue here, and

2    that -- the Supreme Court has said that we need to

3    encourage people to report discrimination.

4            And, you know, these people made an honest

5    report that these remarks were seemed inappropriate, and

6    we don't want to discourage them by saying that, well,

7    you didn't correctly apply the legal standard.

8            THE COURT:  What, if anything, did the Boyer

9    case say about causation?

10            ATTORNEY KAPLAN:  The Boyer case says -- I

11    mean, repeats some language.  This is not its principal

12    holding, but it says that the -- what Peter versus

13    Jenney says, that the issue is whether what the employer

14    said was subjectively --

15            THE COURT:  That's not causation.

16            ATTORNEY KAPLAN:  I'm sorry?

17            THE COURT:  That's not causation.

18            ATTORNEY KAPLAN:  You are right, your Honor.

19    I don't think we have a dispute about causation.  It has

20    to be but-for causation.

21            THE COURT:  All right.

22            Go ahead.

23            Finish up.

24            ATTORNEY KAPLAN:  And, finally, I would make

25    the argument, your Honor, that if the law were as the

1    defendants say the law is, no one would ever report an

2    instance of sex discrimination or racial discrimination

3    at work, at least if it didn't involve them because you

4    also would have the possibility that the employer would

5    say, "Well, we've decided that you're lying," as what's

6    happened here.

7              And here I think that the facts are very

8    clear.  She was not lying.  She was telling the truth.

9    But their position is that this Court can't look beyond

10   that, and I think you'd find it would be inconsistent

11   with the Supreme Court's teaching in the Crawford case

12   and other cases that the system is set up to encourage

13   reporting of discrimination.

14              THE COURT:  All right.

15              Just a couple of minutes.

16              ATTORNEY BARMAK:  Yes, your Honor.

17              While I think that is true, Mr. Kaplan's

18   last --

19              THE COURT:  You think what is true?

20              ATTORNEY BARMAK:  Mr. Kaplan's last comment

21   that the system is set up to encourage complaints, there

22   are countervailing policies.  The Supreme Court

23   addressed this in Nassar; and in Nassar they said, It's

24   would be inconsistent with Title VII to so raise the

25   costs, both financial and reputational, on an employer

1    whose actions were not, in fact, the result of any

2    discriminatory or retaliatory intent."

3              So while it is true that plaintiffs are to

4    be encouraged to make reports, it is also true that

5    employers must make decisions based on the evidence that

6    they have available to them can.  And when they make

7    those decisions without retaliatory intent, there can be

8    no liability.  That is clear under Nassar.

9              Mr. Kaplan's reference to there be several

10   but-for causes, that's saying -- that's making this a

11   mixed-motive case under a different guise.  But the

12   Supreme Court rejected mixed motive in Nassar.  It is a

13   but-for standard, requires retaliatory animus.  They

14   concede there was none, and that is dispositive of the

15   case.

16             THE COURT:  All right.

17             This matter is before the court on a motion

18   for summary judgment.  And defendants argue that

19   plaintiff's concession that defendants terminated

20   plaintiff's employment because defendant concluded that

21   she made a knowingly false allegation of sex harassment,

22   means that plaintiff would be unable to prove her case

23   at trial.

24             Plaintiff responds that the record facts

25   reflect that plaintiff was fired because of her

1    protected activity.  There are undisputed facts in this

2    case that I think are dispositive.

3              The two defendants, one is the parent

4    company of the Cavamezze -- I don't know how it's

5    pronounced, Cavamezze (pronouncing) --

6              ATTORNEY BARMAK:  Cavamezze (pronouncing).

7              THE COURT:  Cavamezze Grill Mosaic, which

8    operates a restaurant in Merrifield.  The parent is

9    Cavamezze Grill, the parent company.  Plaintiff was

10   employed by the Mosaic or the Merrifield, Virginia,

11   operation as a supervisor from February of 2013 until

12   November of 2013.

13             Now, during that employment, her direct

14   supervisor was Mr. Butron, the general manager of that

15   facility.  On October 28th of 2013, plaintiff called Mr.

16   Gresham, the Director of Operations, for the parent

17   company, who supervised all general managers at the

18   subsidiaries, and reported -- Mr. Butron reported that

19   Ms. -- I'm sorry -- plaintiff called Mr. Gresham and

20   reported Ms. Bonilla, a former Mosaic employee, Mosaic

21   being the store at Merrifield, told plaintiff that

22   Mr. Butron had previously told Ms. Bonilla that he would

23   give Ms. Bonilla a pay raise in exchange for sex.

24             This was a report that the plaintiff gave

25   Mr. Gresham, and she didn't hear Butron tell the

1    plaintiff that.  She said that the plaintiff told her

2    Butron had said that.

3            Plaintiff said that Ms. Bonilla made this

4    allegation while plaintiff, Ms. Bonilla and Mr.

5    Marinero, another -- another Merrifield or Mosaic

6    employee were at plaintiff's house.  Plaintiff also

7    expressed some concern that another former Mosaic

8    employee, Ms. Arias, might have left Mosaic employ for a

9    similar reason.

10            Gresham told plaintiff he would investigate

11    these allegations, and on that very same day he reported

12    the plaintiff's allegations -- he reported the

13    plaintiff's allegations to the CEO, who instructed

14    Mr. Gresham to investigate the allegations by speaking

15    with the persons involved.  He did so.

16            Gresham contacted Ms. Bonilla, and he had

17    the assistance of Mr. Valdivia, a manager at the Tysons

18    Corner Cavamezze location, and he served as an

19    interpreter in Spanish and English.

20            And thereafter Mr. Gresham, Mr. Valdivia and

21    Ms. Bonilla had a meeting in which Mr. Gresham asked

22    Ms. Bonilla about the allegations with Valdivia

23    translating, and Ms. Bonilla, during this investigative

24    meeting, denied the truth of the allegations about Mr.

25    Butron and denied that she ever made such an allegation

1    to plaintiff.

2            Now, the plaintiff notes correctly that

3    Ms. Bonilla now recalls, that is, long after the

4    termination of the plaintiff -- it happened in

5    deposition -- she now recalls that she did make the

6    allegation to plaintiff, and I'll come to the

7    significance, if any, of that.

8            Mr. Gresham also contact Ms. Arias, as

9    plaintiff had speculated in her report to Gresham that

10   Arias might have left Mosaic as a result of sexual

11   harassment by *Butron.  Arias explained that she left

12   Mosaic for convenience reasons and denied that Butron

13   offered her a raise in exchange for sex.

14           And then Gresham also spoke with Mr.

15   Marinero, who was also allegedly present when Ms.

16   Bonilla made her allegation -- made her allegation to

17   the plaintiff.  Marinero didn't provide any supporting

18   information for the allegations.  Indeed, he denied ever

19   hearing Ms. Bonilla say that Mr. Butron offered her a

20   raise in exchange for sex.

21           So, based on this investigation, and

22   especially on Arias's and Bonilla's denials of the

23   allegations against Butron, Gresham concluded that

24   plaintiff had fabricated the allegations, and

25   Mr. Gresham accordingly decided to terminate plaintiff's

1    employment for fabricating the report against

2    Mr. Butron.

3          Indeed, I think there is a statement in the

4    briefs that the plaintiff relies on where Gresham has

5    said that he was going to look into it, and if she had

6    lied she would be fired, and if she hadn't lied, then he

7    would be fired, meaning Butron.  Gresham met with the

8    plaintiff, explained his investigation, reported his

9    conclusion, and informed her that she was terminated.

10         Now, to prove a retaliation claim plaintiff

11   must prove that she engaged in protected activity,

12   first.  Second, that her employer took an adverse

13   employment action against her, and third that there was

14   a causal link between the protected activity and the

15   adverse action.

16         No doubt that reporting allegations is a

17   protected activity.  Whether or not it was a good faith

18   report or not, we don't come to that.  We assume at this

19   point that it was a protected activity reporting these

20   allegations.  And, of course, her termination was

21   clearly an adverse employment action.

22         Now, the dispositive issue is whether the

23   facts show a triable issue of fact on whether a

24   reasonable jury could find causation.  Now, a plaintiff

25   can choose to proceed by direct evidence or by using --

1    a direct and indirect -- or by using the McDonnell

2    Douglas burden-shifting framework.  And the Fourth

3    Circuit has said this choice is the plaintiff's choice.

4    It's left to the plaintiff's discretion whether to

5    proceed by direct or indirect evidence or by means of

6    the McDonnell-Douglas burden-shifting framework.  Those

7    are words of the Fourth Circuit in the recent case of

8    Foster against the University of Maryland at 787 Fed.

9    3rd.

10           It's an interesting rule, but it need not

11   concern me because I think the answer in this case is

12   the same whether one uses McDonnell Douglas or the

13   direct-indirect means.

14           Here plaintiff expressly rejects reliance on

15   McDonnell Douglas in favor of proceeding by direct and

16   indirect; and in order to prevail by reliance on direct

17   or indirect, plaintiff must prove not just that the

18   defendant possessed an impermissible motive but acted on

19   it.  That's also from the Diamond case.

20           Causation in a Title VII retaliation case

21   from the Supreme Court Nassar case is a but-for

22   determination.  It's not sufficient for a Title VII

23   retaliation plaintiff to show that retaliatory animus is

24   one of several motivating factors.  Rather, Title VII

25   retaliation must show that the unlawful retaliation

1   would not have occurred in the absence of the alleged

2   retaliatory animus.

3          Put differently, if the same adverse action

4   would have occurred even in the absence of the

5   employer's wrongful retaliatory animus, then plaintiff's

6   claim must fail.  The Nassar case make this point at

7   page 2555 at 133 Supreme Court.  It says, "It is thus

8   textbook tort law that an action is not regarded as a

9   cause of an event if the particular event would have

10  occurred without it."

11         Plaintiff's argument here, distilled to its

12  essence, is that no investigation would have occurred

13  but for plaintiff's protected Title VII activity.

14  Therefore, firing plaintiff at the conclusion of the

15  investigation is causally linked to the protected

16  activity.

17         This argument must fail.  It would -- the

18  plaintiff has outlawed some of the results of going the

19  other way; but if you went this way, then it would

20  immunize all protected activity even if it was blatantly

21  false, and surely that isn't the law.

22         Now, in drawing a causal connection between

23  plaintiff's report and her termination, plaintiff relies

24  on the deposition testimony from Gresham.  This is where

25  he said if the allegation is true Mr. Butron will be

1    terminated; but if the allegation isn't true, and you

2    are making it up, there is a good chance somebody is

3    going to lose their job.  That's the testimony that the

4    plaintiff relies on for causation.

5            And it's clear, and indeed undisputed, that

6    plaintiff would not have been fired but for the

7    investigation.  That's true.  Plaintiff points to no

8    evidence that plaintiff would not have been fired but

9    for retaliatory animus.

10           Indeed, in addition to relying on the

11   testimony that I just quoted that actually suggest an

12   absence of retaliatory animus, it does.  It says, we are

13   going to fire you not for reporting it.  We'll fire you

14   if it's false, and we will not fire you if it's true.

15   We are going to fire him.  So that's -- that statement

16   is really evidence of not a retaliatory animus.

17           So the but-for cause of her termination was

18   the defendant's genuine conclusion, although later shown

19   to be erroneous, long after the event, that she made a

20   knowingly false harassment allegation.

21           Accordingly, it seems to me, the plaintiff

22   has conceded that her termination would have occurred

23   regardless of the presence or absence of retaliatory

24   animus.  And under the Nassar case in the Supreme Court

25   this concession is dispositive of the case and compels

1    summary judgment for defendants.

2          Now, in an attempt to avoid this conclusion,

3    the plaintiff makes two arguments that I want to

4    address.  First, plaintiff cites the Fourth Circuit's

5    decision in Boyer-Liberto for the proposition that

6    plaintiff is protected from retaliation if she

7    reasonably believed she was reporting hostile work

8    activity.

9          Now, the plaintiff is correct to read

10   Boyer-Liberto as holding that if she reasonably believed

11   that she was reporting hostile work environment, yes,

12   that's protected activity.  But Boyer-Liberto says

13   nothing about if she made it up.  The real issue is one

14   of causation.  I think the Boyer-Liberto addresses the

15   first prong of the retaliation claim, the meaning of

16   protect activity, not the causation.  The argument made

17   today by Mr. Kaplan on causation I don't think

18   accurately reflects the law.

19         The second point that the plaintiff makes in

20   its brief, not so much today, was attacking the quality

21   of the defendant's investigation; namely, the absence of

22   written sexual harassment policy.  In my view, that

23   doesn't play a role here.  It might play a role if there

24   were a factual issue and the matter was tried, but it

25   doesn't play a role on the summary judge analysis.

```
 1          Next, Mr. Gresham's lack of training in
 2   conducting sexual assault investigations.  Again, not
 3   relevant.  Failure to consult an attorney, no, doesn't
 4   raise any triable issue of fact.  Failure to consider
 5   that Ms. Bonilla might be reluctant to admit that her
 6   bos propositioned her for second.  No.  Failure to ask
 7   all of these things, Butron, whether the allegation was
 8   true, none of these raise a triable issue of fact.
 9          Now, let me make clear that there might be
10   cases where the adequacy of an investigation might raise
11   a triable issue of fact.  This one, in my opinion, does
12   not.  That doesn't mean that it was a great
13   investigation because we now know that it didn't quite
14   get to the truth.  But it doesn't mean that every time
15   there is an investigation as a triable issue of fact as
16   to the adequacy of an investigation, there would never
17   then be a summary judgment.
18          So, in my view, plaintiff's argument about
19   the reasonableness of defendant's investigation is
20   unavailing at this point.
21          Plaintiff also argues that Title VII doesn't
22   permit an employee to terminate an employer -- beg your
23   pardon, an employee who engaged in good-faith protected
24   activity.  This statement is overbroad.  Title VII
25   certainly prohibits firing an employee because of her
```

1   protected activity.

2            Moreover, plaintiff's argument suggests that

3   whether an employee acted in good faith in engaging in

4   Title VII protected activity is a question for the jury

5   sufficient to survive summary judgment.  That is an

6   issue that was squarely rejected, at least by the

7   Eleventh Circuit in the EEOC against Total System

8   Services case at 221 Fed. 3rd.  And I'll leave that

9   discussion.  I agree with it entirely, there.

10           Plaintiff argues today that deciding the

11   case, as I do, discourage people from making reports.

12   No.  It doesn't.  People are still protected.  Now, in

13   this case, the investigation didn't come up with the

14   truth.  She did make -- I don't know.  I didn't ask and

15   nobody has told me what since happened to Butron, but it

16   doesn't discourage that.

17           It does -- it does encourage defendants to

18   engage in a reasonable investigation, and it

19   acknowledges that defendants ought to be able to rely on

20   an investigation, and it certainly does not sanction or

21   does not approve of false allegations.

22           If I were to accept the plaintiff's argument

23   here, then false accusations would be immunized because

24   any time an investigation went ahead, and defendant was

25   fired after that, then whether the investigation was

1    accurate in coming up with the conclusion that the

2    allegation was false wouldn't matter.  There would still

3    be retaliation.

4            So, I think I have resolved the matter in

5    the proper fashion.  The mere fact that defendant's

6    investigation might not have been perfect does not prove

7    that defendants acted with retaliatory animus.  The

8    Eighth Circuit in the McCulloch case has noted that the

9    appropriate scope of investigation is a business

10   judgment, and shortcomings in an investigation do not,

11   by themselves, support an inference of discrimination.

12           And, in a similar case in the Fourth

13   Circuit -- well, not a similar case, but in the Fourth

14   Circuit, in a statement, the court in the Fourth Circuit

15   reminds us that courts don't sit as kinds of super

16   personnel department weighing the prudence of employment

17   decisions made by firms charged with employment

18   determinations.  That case is not in point, but

19   generally that point is true.

20           Here we would have to conclude that, well,

21   you didn't do a good job on your investigation, you got

22   the wrong answer, but we didn't have that information.

23   The plaintiff would say, look, it's clear that you fired

24   her because of an investigation.  Well, yes.  But she

25   was fired because of what the investigation disclosed,

1       which at that time was that the report was fabricated.

2               And it's very clear that the employer would

3       not have terminated the plaintiff if the investigation

4       had shown the real facts.  That's what Mr. Gresham said

5       in his deposition.  He said he was going to fire Butron

6       if they were true, and he intimated -- he didn't say he

7       would fire plaintiff if they were not true.  I've

8       forgotten what he exactly said.  It would go up the line

9       or something of that sort, but that was the implication.

10              So here, I think plaintiff, in effect,

11      concedes that defendant in fact concluded that plaintiff

12      made a knowingly false allegation -- that is not

13      protected by Title VII -- and that defendants terminated

14      plaintiff's employment as a result of that conclusion.

15      In my view, that ends the matter, and there is no

16      triable issue of fact for a jury.

17              Plaintiff concedes she would have been fired

18      regardless of the defendant's retaliatory animus, which

19      is sufficient for plaintiff to prevail under the

20      Nassar's but-for causation requirement.

21              In fact, the undisputed evidence really only

22      shows that she was fired because they concluded that it

23      was fabricated allegation after looking into it.  And

24      the record also shows that they wouldn't have terminated

25      her if the investigation had showed the -- had shown the

1    contrary.

2              So, in my view summary judgment is

3    appropriate.  I'll enter an order accordingly.  Thank

4    you.

5              ATTORNEY BARMAK:  Thank you, your Honor.

6              ATTORNEY KAPLAN:  Thank you.

7                         ---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

1

2

3        I, MICHAEL A. RODRIQUEZ, an Official Court

4   Reporter for the United States District Court, in the

5   Eastern District of Virginia, Alexandria Division, do

6   hereby certify that I reported by machine shorthand, in

7   my official capacity, the proceedings had upon the

8   motions hearing in the case of PATRICIA VILLA v.

9   CAVAMEZZE GRILL, LLC et al.

10

11        I further certify that I was authorized and

12   did report by stenotype the proceedings in said motions

13   hearing, and that the foregoing pages, numbered 1 to 27,

14   inclusive, constitute the official transcript of said

15   proceedings as taken from my machine shorthand notes.

16

17        IN WITNESS WHEREOF, I have hereto subscribed

18   my name this ___27th___ day of ___April_____, 2016.

19

20

                         _____/s/_____
21                       Michael A. Rodriquez, RPR/CM/RMR
                              Official Court Reporter
22

23

24

25